IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY FLEISCHER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:17-cv-08295 |
| v. | ) | |
| | ) | |
| ACCESSLEX INSTITUTE d/b/a ACCESS | ) | |
| GROUP; CONDUENT EDUCATION | ) | |
| SERVICES, LLC f/k/a ACS EDUCATION | ) | Honorable Judge Manish S. Shah |
| SERVICES; MASSACHUSETTS HIGHER | ) | Magistrate Judge Jeffrey Cole |
| EDUCATION ASSISTANCE CORPORATION | ) | |
| d/b/a AMERICAN STUDENT ASSISTANCE; | ) | |
| DELTA MANAGEMENT ASSOCIATES, | ) | |
| INC.; F.H. CANN & ASSOCIATES, INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT MASSACHUSETTS HIGHER
## EDUCATION ASSISTANCE CORPORATION'S
## ANSWER, AND AFFIRMATIVE DEFENSES TO FIRST AMENDED COMPLAINT

Defendant, Massachusetts Higher Education Assistance Foundation, d/b/a American Student Assistance ("ASA"), for its answer and affirmative defenses to the First Amended Complaint of Plaintiff, Jeffrey Fleischer, states as follows:

## INTRODUCTION

ASA makes no response to the "Introduction" set forth in the Complaint because that "Introduction" consists of Plaintiff's conclusions to which no answer is required. To the extent an answer is required, ASA denies the factual statements set forth in the Plaintiff's "Introduction."

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction over Plaintiff's Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") claims pursuant to 28 U.S.C. § 1331 because such claims arise under the laws of the United States.

**ANSWER:** ASA admits this Court has jurisdiction over Plaintiff's claims under the Fair Debt Collection Practices Act, but affirmatively states that Plaintiff cannot state a claim against ASA under the Fair Debt Collection Practices Act.

2.      Given the inextricably intertwined nature of Defendants' servicing and debt collection conduct involving Plaintiff's student loan account, this Court should exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiff's state law claims.

**ANSWER:** ASA denies that this Court can exercise supplemental jurisdiction over state law claims asserted against ASA pursuant to 28 U.S.C. §1367.

3.      Alternatively, this Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a), because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

**ANSWER:** ASA admits that it is a citizen of Massachusetts, since that is where it is incorporated and where it maintains its principal place of business. ASA denies that the matter in controversy exceeds $75,000, exclusive of interests and costs. ASA is without knowledge or information sufficient to truthfully admit or deny if the Plaintiff is diverse to the other defendants.

4.      This Court has personal jurisdiction over Defendants, because they do business in the State of Illinois and a substantial part of the wrongful acts alleged in this Complaint were committed in Illinois.

**ANSWER:** ASA admits that this Court has personal jurisdiction over ASA. ASA is without knowledge or information sufficient to truthfully admit or deny the remaining allegations of this paragraph.

5.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), because Plaintiff resides in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here.

**ANSWER:** ASA admits the allegations of this paragraph.

## PARTIES

6.      Plaintiff Jeffrey Fleischer is a citizen of the State of Illinois and resides in the City of Chicago.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

7. Defendant Accesslex Institute d/b/a Access Group ("Access Group") is a foreign corporation, with its principal place of business located at 10 North High Street, Suite 400, West Chester, Pennsylvania 19380.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

8. In 2004, Access Group was in the business of offering student loans, and issued the Note implicated in this case; Access Group also initially serviced Plaintiff's consolidated loan.

**ANSWER:** ASA admits the allegations of this paragraph.

9. Access Group ceased providing loans in 2010 due to legislative action that eliminated the federal guaranteed student loan program.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

10. The loan-servicing performed by Access Group, including the servicing of Plaintiff's loan, was transferred to ACS Education Services on or about December 23, 2011. See *December 23, 2011 Access Group Press Release,* attached hereto as Exhibit A.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

11. Defendant Conduent Education Services, LLC f/k/a ACS Education Services ("ACS") is a Delaware limited liability company, with its principal executive offices locates at 2277 E. 20th Street, Long Beach, California 90810.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

12. From 2003 to 2013, as a subsidiary of Xerox, ACS handled servicing of student loans under a Department of Education contract worth an estimated $2 billion.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

13. According to Conduent's website, on January 1, 2017, ACS became part of Conduent Business Services, LLC, the world's largest business process services company.

**ANSWER:** ASA admits the allegations of this paragraph.

14. Since becoming a subsidiary of Conduent Business Services, ACS is now Conduent Education Services, LLC.

**ANSWER:** ASA admits the allegations of this paragraph.

15. Defendant Massachusetts Higher Education Assistance Corporation d/b/a American Student Assistance ("ASA") is a Massachusetts non-profit corporation, with its corporate headquarters located at 100 Cambridge Street, Suite 1600, Boston, Massachusetts 02114.

**ANSWER:** ASA admits the allegations of this paragraph.

16. ASA is a FFELP guarantor; while federal legislation ended privately financed, federally guaranteed education loans under the FFELP, ASA continues to fulfill its obligations as a guarantor for its remaining FFELP portfolio, which stands at approximately $35 billion and 1.3 million borrowers.

**ANSWER:** ASA admits the allegations of this paragraph.

17. Defendant Delta Management Associates, Inc. ("Delta Management") is a Massachusetts collection agency with its corporate headquarters located at 100 Everett Ave., Suite 6, Chelsea, Massachusetts 02150.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

18. According to its website, "[f]or more than 31 years, Delta has offered superior recovery and default management solutions to clients in the higher education, government and financial services industries."

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

19.     Defendant F.H. Cann & Associates ("F.H. Cann") is a Massachusetts collection agency with its principal place of business located at 1600 Osgood St., Suite 20-2/20, North Andover, Massachusetts 01845.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

20.     According to its web site, F.H. Cann was established in 1999 and "utilizes the latest technology the collection industry has to offer in order to maintain both a competitive advantage and a high level of compliance and recoveries in this ever-evolving profession."

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

## The FFELP System and Student Loans Generally

21.     According to the Consumer Financial Protection Bureau ("CFPB"), as of September 2015, more than 41 million Americans collectively owe more than $1.2 trillion in student loan debt, making student loan debt the second-Largest class of consumer debt behind mortgages. See *September 2015 CFPB Report on Student Loan Servicing,* attached hereto as Exhibit B.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph. ASA denies that the allegations in this paragraph are relevant to any of Plaintiff's claims.

22.     More than one-in-four student loan borrowers are now delinquent or in default on a student loan. *Id.*

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph. ASA denies that the allegations in this paragraph are relevant to any of Plaintiff's claims.

23.     When a borrower defaults on a student loan and the lender is unable to recover the amount, the lender recoups its loss from the guarantor.

**ANSWER:**     ASA admits the allegations of this Paragraph, to the extent they are referring to the type of loan that was made to Plaintiff which is at issue in this case.

24. After a guaranty is paid, the Department of Education ("ED") acts as a secondary insurer on a FFELP loan, such as Plaintiff's.

**ANSWER:** ASA admits that the Department of Education acts as a reinsurer on a FFELP loan, such as Plaintiff's.

25. Thus, when a lender assigns a defaulted loan, the guarantor must take diligent steps to recover the default amount, but having done so, may them also recover up to one hundred percent of its losses from ED.

**ANSWER:** ASA admits the allegations of this paragraph.

26. Lenders and guarantors are therefore insulated from loss.

**ANSWER:** ASA denies the allegations of this paragraph.

27. This system, in which losses are ultimately borne by the Taxpayer, inures to the benefit of not only the lenders and guarantors, but to student loan servicers and collectors as well.

**ANSWER** ASA denies the allegations of this paragraph, and affirmatively states that the system actually inures to the benefit of millions of student loan borrowers who would otherwise be unable to fund their higher education.

28. For example, except in extraordinary circumstances, student loan debt is not dischargeable in bankruptcy.

**ANSWER:** ASA admits that student loan debt is not dischargeable in bankruptcy, unless a debtor can establish "undue hardship" under Section 523(a)(8) of the Bankruptcy Code. ASA denies that the allegations of this paragraph are relevant to any of Plaintiff's claims.

29. Also, lenders, servicers, and collectors are not constrained by any statute of limitations in which to sue, collect or otherwise enforce student loans.

**ANSWER:** ASA admits the allegations of this paragraph, but denies they are relevant to any of Plaintiff's claims.

30. Student debtors' wages can be administratively garnished, without benefit of a judgment, and their tax refunds may be intercepted via the Treasury Offset Program, or "TOP."

**ANSWER:** ASA admits the allegations of this paragraph, but denies they are relevant to any of Plaintiff's claims.

31. As a consequence, there are few economic incentives for student lenders, servicers, guarantors, and collectors to provide superior customer service.

**ANSWER:** ASA denies the allegations of this paragraph, and further denies that they are relevant to any of Plaintiff's claims.

### Origination and Payment History

32. In this case, on or about June 1, 2004, Plaintiff consolidated several undergraduate and graduate student loans with Access Group. See *Federal Consolidation Loan Application and Promissory Note*, attached hereto as Exhibit C

**ANSWER:** ASA admits the allegations of this paragraph.

33. After Fleischer's purported default, Access Group recouped the loan balance from guarantor ASA on or about March 26, 2013 according to ACS response to Plaintiff's CFPB complaint dated March 29, 2117, Ex H, infra.

**ANSWER:** ASA admits the allegations of this paragraph.

34. After consolidating his loans in June 2004, Plaintiff timely made all of his required student loan payments to Defendant Access Group for the remainder of that year.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

35. Plaintiff timely made all of his required student loan payments to Access Group in 2005.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

36. Plaintiff timely made all of his required student loan payments to Access Group in 2006.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

37.     In 2007, Access Group lowered Plaintiff's interest rate from 3.5% to 2.5% as a result of Plaintiff making 36 consecutive timely payments.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

38.     Plaintiff timely made all of his required student loan payments to Access Group in 2007.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

39.     In 2008, Plaintiff Jeffrey Fleischer accepted a temporary, grant-funded position abroad.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

40.     Plaintiff timely made all of his required student loan payments to Access Group in 2008, while abroad.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

41.     At the end of 2008, Plaintiff returned to the United States and, like many Americans at that time, he had difficulty securing employment.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

42.     Despite being unemployed, Plaintiff utilized his savings to timely make all required student loan payments to Access Group in 2009.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

43.     Plaintiff continued to utilize his savings to timely make all required student loan payments to Access Group in 2010.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

44. At the beginning of 2011, Plaintiff remitted a $3000 payment to Access Group to cover all required payments for the following year.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

45. Accordingly, Plaintiff <u>paid significantly more in student loan payments than he earned</u> in 2009, 2010 and 2011.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

**Plaintiff's Forbearance Request and the Servicing Transfer of the Loan**

46. In or about November, 2011, in response to his depleted savings and continued difficulty in securing a consistent income, Plaintiff applied for a forbearance of his student loan agreement with Access Group.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph. ASA affirmatively states that Access Group reported to ASA that it never received a forbearance request in November 2011.

47. Plaintiff then called Access Group to follow up on his application.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

48. During that conversation, the Access Group representative informed Plaintiff that: (1) Plaintiff's application for forbearance was accepted; (2) the 2.5% interest rate on the loan would continue to accrue during the forbearance; (3) the forbearance would last up to three years; and (4) Access Group had sent the forbearance acceptance letter to Plaintiff's previous address.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph. ASA affirmatively states that (i) Access Group does not

show it ever received a forbearance request from Plaintiff in November 2011; and (ii) forbearances

are not granted in three-year increments.

49.     In response, during that conversation, Plaintiff provided the Access Group representative with his current address at 6118 N. Sheridan Rd Apt. 902, Chicago, Illinois; to be certain, Plaintiff had the representative read his address and telephone number back to him to confirm that Access Group had his current information.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

50.     At that time, when the forbearance period started, Plaintiff's student loan balance was approximately $38,000.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

51.      Shortly thereafter, on December 23, 2011, according to the press release "Access Group, Inc. Select[ed] ACS, A Xerox Company, for Loan Servicing."  Ex. A.

**ANSWER:**     ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

52.     Also according to its press release, "the conversion of the loans to the ACS system is subject to the confirmation of applicable rating agencies of the ratings of Access Group's asset-backed securities that finance the loan portfolio. The conversion is expected to be completed by March 31, 2012."

**ANSWER:**     ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

53.     Access Group did not send the press release to Plaintiff, not any notice of the servicing transfer from Access Group to ACS.

**ANSWER:**     ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

54.     Additionally, Plaintiff, unaware of the servicing transfer, never received any written confirmation of the forbearance from either Access Group or ACS.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

55. In fact. <u>Plaintiff received no correspondence from any entity regarding the subject student loan account for the next 23 months</u>.

**ANSWER:** ASA denies the allegations of this paragraph.

56. Historically, Xerox/ACS record of transferring loans has not been stellar. See *December 13, 2012 "Final Alert Memorandum: and November, 2015 "Functionality of the Debt Management Collection System" Final Audit Report*, concerning ACS' to implement the Debt Collection System 2, both from Department of Education's Office of Inspector General ("OIG") attached hereto as Group Ex. D.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

57. The foregoing Paragraph is consistent with Plaintiff's allegations that neither Access Group nor ACS ever informed Plaintiff of the servicing transfer.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

**Two Years After Access Group-ACS Servicing Transfer, Collection Efforts Resume**

58. On November 8, 2013, Plaintiff received a letter from Delta Management (a company that Plaintiff had never heard of) stating:

   a.    The subject student loan was in default;

   b.    The subject student loan account was now serviced by ACS another company that Plaintiff, at that time, had never heard of;

   c.    The subject student loan account was now owned by ASA, yet another company that Plaintiff had never heard of; and

   d.    The subject student loan balance was now approximately $51,000.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

59.     Plaintiff was alarmed that his balance had increased by approximately $13,000 as the balance on a $38,000 loan at 2.5%, compounded, should have only been approximately $39,923.

**ANSWER:**   ASA denies e allegations of this paragraph because they do not accurately describe a loan in default.

60.     Thus, on information and belief, which Plaintiff verily believes, the additional fees and/or an increased interest rate related to the wrongful default increased his indebtedness by over $11,000.

**ANSWER:**   ASA denies that the default was "wrongful."

61.     That same day, November 8, 2013, Plaintiff called Access Group because it was Access Group who granted the forbearance in or about November 2011; Access Group confirmed that the loans had been transferred and that he should call ACS.

**ANSWER:**   ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

62.     Access Group did not explain why he was not informed sooner, in writing, of the transfer of the consolidated loan.

**ANSWER:**   ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

63.     Also that same day, Plaintiff filed a complaint with the Consumer Financial Protection Bureau ("CFPB").

**ANSWER:**   ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

64.     On November 12, 2013, Plaintiff called Delta Management and spoke to representative Jose Torres, who stated that he would note that the subject account was in dispute and transferred Plaintiff to his supervisor, Irene Metcalfe.

**ANSWER:**   ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

65.     Ms. Metcalfe, who noted that Plaintiff had "excellent credit" and acknowledged that Plaintiff's confusion made sense, told Plaintiff to call ASA because, "they're good at working with situations like this."

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

66.     Two days later, on November 14, 2013, Plaintiff called ASA and spoke to a representative who refused to provide his name and repeatedly cut Plaintiff off, interrupting him when he attempted to explain the situation and his confusion.

**ANSWER:**  ASA denies the allegations of this paragraph.

67.     When Plaintiff told the ASA representative that he hadn't heard of ASA, ACS, or Delta Management before, the representative said that was because "we had to track you down."

**ANSWER:**  ASA denies the allegations of this paragraph.

68.     Thus, Plaintiff was shuffled from Access Group to Delta Management to ASA, without any Defendant providing information about Plaintiff's loan.

**ANSWER:**  ASA denies the allegations of this paragraph.

69.     The ASA representative's characterization "we had to track you down" was false, because, as stated *supra*, Plaintiff provided Access Group with his address and telephone number in December, 2011, and that information remained the same thereafter.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

70.     Additionally, even if the Access Group representative did not properly record Plaintiff's correct address, his address was readily accessible to Defendants, as it has been reported on Plaintiff's Transunion credit report since December 18, 2011.  See *First Page of Plaintiff's April 19, 2017 Transunion Credit*, attached hereto as Exhibit E.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

d:\85147-03\docs\mass higher education answers and  affirmative defenses to amended  complaint (3) apr12 2018.docx

71.     After being shuffled back and forth, and getting nowhere in his attempt at obtaining an answer and resolution with the unnamed ASA representative, Plaintiff was forced to retain an attorney.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

72.     On November 27, 2013, Plaintiff's prior counsel sent a letter to ASA and Delta Management explaining the situation and disputing the purported amount of Plaintiff's debt.  See *November 27, 2013 Correspondence*, attached hereto as Exhibit F.

**ANSWER:**  ASA admits receiving the letter attached to the Complaint as Exhibit F, but affirmatively states it was received via facsimile on December 2, 2013.

73.     Specifically, the November 27, 2013 letter disputed the amount ASA claimed was owed, described Plaintiff's long history of timely payments, and noted that neither ACS nor ASA notified Plaintiff of the loan's transfer, any servicing transfer, or the purported default.  *Id.*

**ANSWER:**  ASA admits receiving the letter attached to the Complaint as Exhibit F. ASA neither admits nor denies Plaintiff's description of what the letter states.

74.     Plaintiff's prior counsel received no response until over two months later; and the January 28, 2017 response only requested a third party authorization in order to speak to or correspond with Plaintiff's prior counsel.  See *January 28, 2014 ASA Correspondence*, attached hereto as Exhibit G.

**ANSWER:**  ASA admits it sent Plaintiff's prior counsel the letter attached to the Complaint as Exhibit G. ASA denies the remaining allegations of this paragraph.

75.     Plaintiff immediately faxed a third-party authorization letter to ASA.

**ANSWER:**  ASA admits receiving a letter from Plaintiff via fax on February 7, 2014. ASA denies the remaining allegations of this paragraph.

76.     Another two full months later, in April 2014, Plaintiff's prior counsel received a letter from ASA that did not respond to any issue raised in the correspondence, but instead simply reiterated the purported amount of debt and fees, and failed to acknowledge Plaintiff's forbearance agreement and Defendants' failure to provide notice of the ownership transfer, servicing transfer, and pending "default."

Page **14** of 46

**ANSWER:**  ASA denies the allegations of this paragraph. ASA further states it sent a letter to Plaintiff's prior counsel dated March 11, 2014, which it copied to Plaintiff, in which it addressed and detailed the history of Plaintiff's loan.

77.     Plaintiff's prior counsel responded to ASA's letter by reasserting that the collection fees and amount purportedly owed were illegitimate and offered to pay ASA the legitimate amount of the debt.

**ANSWER:**  ASA denies the allegations of this paragraph.

78.     ASA responded by demanding that Plaintiff's prior counsel speak to Delta Management, instead of ASA, about the issue.

**ANSWER:**  ASA denies the allegations of this paragraph.

79.     Thus, Plaintiff, through counsel, was again shuffled from one entity to the other without answers or a resolution.

**ANSWER:**  ASA denies the allegations of this paragraph.

80.     Plaintiff's prior counsel then contacted Delta Management.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

81.     In response, on or about May 28, 2014, Delta Management sent Plaintiff's prior counsel a request for a third-party authorization.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

82.     Again, Plaintiff promptly sent the requested third-party authorization to Delta Management.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

83.     Plaintiff's prior counsel subsequently had several phone conversations with Delta Management representatives.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

84. In one conversation, a Delta Management representative claimed that ASA sent letters to Plaintiff starting in March 2013 to Plaintiff's correct address, none of which Plaintiff ever received.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

85. The foregoing false assertion that "letters were sent" contradicts the ASA representative's previous false assertion that they "had to track [Plaintiff] down."

**ANSWER:** ASA denies the allegations of this paragraph.

86. In another conversation, a Delta Management representative claimed that Defendants tried calling Plaintiff and that his "voicemail wasn't set up;" however, Plaintiff's phone number has remained the same since November 2011 and his phone has continuously had voicemail since the day it was activated.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

87. In yet another conversation, a Delta Management representative acknowledged that ACS had never provided any paperwork related to the servicing and ownership of the subject loan, either to ASA or Delta Management; and therefore Delta Management could not provide any relevant documents to Plaintiff's prior counsel.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

88. Plaintiff subsequently received no correspondence from any of the Defendants, nor any meaningful information from the CFPB regarding his November 8, 2013 complaint, for approximately two years.

**ANSWER:** ASA denies the allegations of this paragraph.

89. In February, 2017, Plaintiff escalated the matter to the offices of Senators Dick Durbin and Tammy Duckworth.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

90.     Plaintiff received prompt responses from both Senators' offices stating that they had forwarded his requests for escalation to the CFPB.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

91.     On or about April 8, 2017, over three years' [sic] after he filed a complaint, Plaintiff received a letter dated March 29, 2017 from the CFPB with ACS' "Response" attached.  See *March 29, 2017 CFPB Correspondence*, attached hereto as Exhibit H.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

92.     ACS' CFPB Response claims that Plaintiff's student loan account became past due in March 2012, that past due notices were sent, and collection attempts were made, but no supporting documentation was attached or provided.  *Id.*

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

93.     Further, ACS' Response states that "[i]f [Plaintiff] is able to provide proof that his loans were rehabilitated he should forward this information to us."  *Id.*

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

94.     However, any documentary evidence, including transcripts of phone conversations, relating to Plaintiff's forbearance is in Defendants' exclusive possession and control.

**ANSWER:** ASA admits it has notes of Communications that it had with Plaintiff and/or Plaintiff's counsel. ASA is without knowledge or information sufficient to truthfully admit or dent the remaining allegations of this paragraph.

95.     Two days later, on or about April 10, 2017, Plaintiff received a letter from F.H. Cann attempting to collect the subject student loan account.  See *April 4, 2017 F.H. Cann Correspondence*, attached hereto as Exhibit I.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

96. On April 27, 2017, Plaintiff sent a letter to F.H. Cann disputing the stated amount owed. See *April 27, 2017 Plaintiff Correspondence*, attached hereto as Exhibit J.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

97. In response, on or about June 1, 2017, F.H. Cann sent Plaintiff another letter that simply reiterated that the subject student loan account is in default, without providing any supporting documentation for the amount allegedly owed. See *June 1, 2017 F.H. Cann Correspondence*, attached hereto as Exhibit K.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

98. Thus, F.H. Cann failed to provide a validation of the debt to Plaintiff.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

99. In addition, F.H. Cann's June 1, 2017 letter states, in relevant part:

> American Student Assistance has entered into an agreement with the U.S. Department of Education to participate in the federal loan rehabilitation program. Under the program, borrowers who made 9 qualifying payments over a 10 month period can have their defaulted loans rehabilitated and enjoy benefits including:
> **\*Deletion of default status to the major credit reporting bureaus**
> \*Avoidance of involuntary wage garnishment
> \*Removal from the Treasury Offset Program
> \*Return to standard loan servicing (no more collection agencies)
>
> Ex. K (**emphasis supplied**).

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

100.    The ED contracts with Private Collection Agencies ("PCAs") in effort to collect on defaulted student loans.

**ANSWER:**  ASA admits the allegations of this paragraph.

101.    Defendant F.H. Cann is one such PCA that has a contract with the ED.  See *F.H. Cann Contract*, attached hereto as Exhibit L.

**ANSWER:**  ASA admits the allegations of this paragraph.

102.    The ED provides guidelines, policies, and procedures to PCAs in their student loan debt collection efforts in the form of a PCA Procedures Manual.  See *PCA Procedures Manual:  2009 ED Collections Contract* cover page and excerpt, attached hereto as Exhibit M.

**ANSWER:**  ASA admits the allegations of this paragraph.

103.    The PCA Manual incorporates related law and regulations:  "[t]he guaranty agencies, lenders or subsequent note holders will adhere to the due diligence requirements in making, disbursing, servicing and collecting loans as outlined in the applicable regulations, 34 CFR 682.206-208; 34 CFR 682.411; and 34CFR [sic] 682.507;" the PCA Manual also states that "[t]he FDCPA does, however, apply to the PCAs ED retains to perform collection services on student loans."

**ANSWER:**  ASA admits the allegations of this paragraph.

104.    The PCA Manual also states, in relevant part:

> **Collectors must not state or imply to borrowers that the default information reported by the original lender (e.g., the bank that made the FFEL) or by the guaranty agency or Department will be deleted or expunged before the applicable 7-year period has run.**

*Id*.

**ANSWER:**  ASA admits the allegations of this paragraph.

105.    As set forth *supra*, in its June 1, 2017 letter, F.H. Cann stated that Plaintiff could enjoy "deletion of default status to the major credit reporting bureaus," in direct contravention of the ED's PCA Procedures Manual.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

**Plaintiff's Treasury Offset**

106.    On or about June 9, 2017, the Department of the Treasury sent a letter to Plaintiff stating that it had seized Plaintiff's federal income tax refund, totaling $2,223.71, and applied it to his student loan account owned by ASA.  See *TOP Correspondence*, attached hereto as Group Exhibit N.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

107.    Subsequently, on September 21, 2017, the Internal Revenue Service ("IRS") sent a letter to Plaintiff stating that it had sent Plaintiff a refund check for $2,223.71 in error, as it had misapplied another taxpayer's statement to his account, and demanding the money back.  *Id*.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

108.    Since the filing of the original complaint in this matter, the IRS subsequently rescinded the demand in a letter dated October 16, 2017.  *Id*.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

109.    Thus, on information and belief, one or more of the Defendants wrongfully referred Plaintiff's loan for a TOP, causing him distress, inconvenience, and fear of an unmerited prosecution by the IRS.

**ANSWER:**   ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

## The Higher Education Act and its Implementing Regulations

110.    The Higher Education Act ("HEA") was enacted in 1965 and was intended "to strengthen the educational resources of our colleges and universities and to provide financial assistance for students in postsecondary and higher education."

**ANSWER:**  ASA admits the allegations of this paragraph.

111.    The HEA initiated the Federal Family Education Loan Program ("FFELP"), which was the second largest of the federal higher education loan programs.

**ANSWER:**  ASA admits the allegations of this paragraph.

112.     On April 24, 2009, President Obama called for an end to FFELP, calling it a wasteful and inefficient system.

**ANSWER:**  ASA admits the allegations of this paragraph.

113.     On or about January 5, 2010, FFELP was eliminated and no subsequent loans were permitted to be made under the program after June 30, 2010.

**ANSWER:**  ASA admits the allegations of this paragraph

114.     However, lenders/servicers continue to service approximately $253 billion in outstanding FFELP loans.

**ANSWER:**  ASA admits the allegations of this paragraph.

115.     As part of servicing FFELP loans like Plaintiff's, lenders/servicers are required to follow certain servicing regulations and guidelines.

**ANSWER:**     ASA admits the allegations of this paragraph.

116.     As set forth below, Defendants violated several regulations in the servicing of Plaintiff's FFELP loan.

**ANSWER:**  ASA denies the allegations of this paragraph.

<u>The Defendants Failed to Document and Record Plaintiff's Forbearance</u>

117.     As set forth *supra*, in or about December, 2011, Access Group told Plaintiff over the telephone that he was being granted a forbearance.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

118.     Also, at that time, Plaintiff advised Access Group of his new address, specifically asking the representative to repeat it over the phone.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

119.     Pursuant to 34 CFR § 682.211(b)(1), a lender may grant forbearance if:

(1) The lender and the borrower or endorser agree to the terms of the forbearance and, unless the agreement was in writing, <u>the lender sends, within 30 days, a</u>

<u>notice to the borrower or endorser confirming the terms of the forbearance and records the terms of the forbearance in the borrower's file.</u>

<u>Emphasis supplied</u>.

**ANSWER:** ASA admits that 34 CFR §682.211(b)(1) contains the language quoted in the paragraph.

120. Because the agreement was not in writing, the servicer was obligated to send notice to Plaintiff and record the terms of the forbearance in Plaintiff's file.

**ANSWER:** ASA admits that before a non-written forbearance is enforceable, the lender must send notice to Plaintiff and record the terms of the forbearance in Plaintiff's file. ASA is without knowledge or information sufficient to truthfully admit or deny the remaining allegations of this paragraph.

121. The servicer, whether Defendant Access Group or Defendant ACS, failed to send notice to Plaintiff.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

122. Also, on information and belief, the servicer failed to record the terms of the forbearance in Plaintiff's file.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

123. Having failed to properly document the forbearance and terms thereof, the servicer, either Access Group or ACS, continued to improperly service Plaintiff's student loan.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

<u>Defendants Failed to Send Required Notices during Forbearance</u>

124. When a loan is placed in forbearance, as Plaintiff's was in or about December 2011, the servicer must contact the borrower every 180 days. 34 CFT 682.211(e).

Page **22** of 46

**ANSWER:** ASA admits that during a period of forbearance, a lender must contact the borrower at least once every 180 days. ASA is without knowledge or information sufficient to truthfully admit or deny the remaining allegations of this paragraph.

125. The servicer(s) in this case, however, failed to contact Plaintiff for 23 months.

**ANSWER:** ASA denies the allegations of this paragraph.

126. When a loan is in forbearance, the notice required under 34 CFR 682.211(e) must contain the following information:

  (i)    The outstanding obligation to repay;

  (ii)   The amount of the unpaid principal balance and any unpaid interest that has accrued on the loan since the last notice provided to the borrower or endorser under this paragraph;

  (iii)  The fact that interest will accrue on the loan for the full term of the forbearance;

  (iv)   The amount of interest that will be capitalized, as of the date of the notice, and the date capitalization will occur;

  (v)    The option of the borrower or endorser to pay the interest that has accrued before the interest is capitalized; and

  (vi)   The borrower's or endorser's option to discontinue the forbearance at any time.

34 CFR § 682.211(e)(i)-(vi).

**ANSWER:** ASA admits the foregoing requirements are set forth in 34 CFR §682.211(e)(i)-(vi).

127. The loan servicer(s), whether Access Group and/or ACS, failed to send the information required every 180 days during a forbearance for a period between December 2011 and November 8, 2013, thus violating the law at least three times during that period.

**ANSWER:** ASA admits that the loan was not identified as being in forbearance at any time between December 2011 and November 8, 2013, so the notices required by 34 CFR §

682.211(e) were not sent. ASA is without knowledge or information sufficient to truthfully admit or deny the remaining allegations of this paragraph.

<u>Defendants Failed to Exercise "Due Diligence" Prior to Declaring Default</u>

128.    According to ACS, in or about March 2012, Defendant ACS (wrongfully) declared Plaintiff's loan "delinquent."

**ANSWER:**  ASA admits that the servicer declared the loan delinquent in March 2012, but is without knowledge or information sufficient to truthfully admit or deny whether that was "wrongful."

129.    In cases of delinquency, the servicer's actions are prescribed by 34 CFR § 682.411, which requires "due diligence."

**ANSWER:**  ASA admits the allegations of this paragraph.

130.    ACS failed to exercise due diligence in servicing Plaintiff's loan.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

131.    ACS failed to send at least one written notice during the first 15 days of the "delinquency," in violation of 34 CFR § 682.411(c).

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

132.    During the 16-180 days of the "delinquency," ACS failed to make four diligent efforts to contact Plaintiff by phone and send four letters to Plaintiff at the address Plaintiff provided during his conversation with Access Group in or about December 2011, and available on Plaintiff's credit report, in violation of 34 CFR § 682.411(d).

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

133.    Additionally, during the 16-180 period, ACS failed to advise Plaintiff that the loan would be assigned to the guaranty agency and the delinquency reported to the Consumer Reporting Agencies, constituting a separate violation of 34 CFR § 682.4119(d).

Page **24** of 46

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

134. During the 181-270 days of the "delinquency," ACS failed to engage in efforts to urge Plaintiff to make the required payments on the loan, including providing information to the borrower regarding options to avoid default and the consequences of defaulting on the loan, in violation of 34 [sic] CFR § 682.411(e).

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

135. In fact, the servicer made no efforts to contact Plaintiff whatsoever during the 23-month period of the putative "delinquency," which it wrongfully fabricated against Plaintiff, after Access Group told Plaintiff he was being placed in forbearance for up to three years.

**ANSWER:** ASA denies there was a 23 month period of delinquency.

136. Lastly, prior to a delinquent student loan being placed in default, 34 CFR § 682.411(f) requires a "final demand" letter to be sent:

> On or after the 241st day of delinquency (the 301st day for loan payable in less frequent installments than monthly) the lender must send a final demand letter to the borrower requiring repayment of the loan in full and notifying the borrower that a default will be reported to each nationwide consumer reporting agency. The lender must allow the borrower at least 30 days after the date the letter is mailed to respond to the final demand letter and to bring the loan out of default before filing a default claim on the loan.

34 CFR § 682.411(f).

**ANSWER:** ASA admits the foregoing language appears in 34 CFR § 682.411(f).

137. On information and belief, which Plaintiff verily believes, ACS did not send the "final demand" letter required under law prior to declaring him in default.

**ANSWER:** ASA denies the allegations of this paragraph.

138. The foregoing is based on ACS' description of when the loan was declared delinquent and in default, as well as Plaintiff's credit reports, but the identity of the servicer of Plaintiff's loan at any given point in time is in the sole possession of the Defendants.

**ANSWER:** ASA admits the allegations of this paragraph.

<u>Defendants Failed to Inform Borrower of Transfers of Servicing and Ownership</u>

Page **25** of 46

139.    While Access Group's transfer to ACS for servicing was initiated December 23, 2011 (Ex. A), Plaintiff's alleged "default" and payment of the guaranty occurred on or about March 26, 2013, according to ACS (Ex. D).

**ANSWER:**  ASA admits that it paid a default claim and became the holder of Plaintiff's loan on March 24, 2013.

140.    In addition to never being informed of the transfer of the servicing rights to the loan from Access Group to ACS, however, Plaintiff was also never informed of the transfer of the ownership from Access Group to ASA.

**ANSWER:**  ASA denies the allegations of this paragraph.

141.    A servicer of a guaranty agency loan has due diligence obligations upon transfer of a covered student loan; however, in this case, Defendants recklessly ignored the requirements they agreed to observe.

**ANSWER:**  ASA denies the allegations of this paragraph.

142.    If the assignment or transfer of ownership interest of a Stafford, PLUS, SLS, or Consolidation loan is to result in a change in the identity of the party to whom the borrower must send subsequent payments, the law requires that the assignor (here, Access Group) and assignee (here, ASA) shall, no later than 45 days from the date the assignee acquires a legally enforceable right to receive payment from the borrower on the assigned loan, provide, either jointly or separately, a notice to the borrower with certain enumerated information.  34 CFR § 682.208(e).

**ANSWER:**  ASA admits the regulation requires notice of a change of servicer.

143.    Specifically, the notice of transfer must inform the borrower of:

(i)     The assignment;

(ii)    The identity of the assignee;

(iii)   The name and address of the party to whom subsequent payments or communications must be sent;

(iv)    The telephone numbers of both the assignor and the assignee;

(v)     The date, if applicable, on which the current loan servicer will stop accepting payments;

(vi)    The date, if applicable, on which the new loan servicer will stop accepting payments;

       (vii)    The date on which the new loan servicer will begin accepting payments.

34 CFR § 682.208(e)(1)(i)-(vii).

    **ANSWER:**   ASA admits the foregoing requirements are set forth in 34 CFR § 682.208(e)(1)(i)-(vii).

    144.    If the assignor and assignee separately provide the notice required by paragraph (e)(1) of this section, each notice must indicate that a corresponding notice will be sent by the other party to the assignment.

    **ANSWER:**  ASA admits the allegations of this paragraph.

    145.    Neither Access Group, nor ACS, nor ASA ever provided the notice as required by 34 CFR § 682.208(e).

    **ANSWER:**  ASA denies the allegations of this paragraph and affirmatively states that it sent proper notice to Plaintiff on March 29. 2013.

    146.    Even if a student loan has not been assigned, but nevertheless there is a change in the identity of the party to whom the borrower must send subsequent payments or direct any communications concerning the loan, the holder of the loan shall, no later than 45 days after the date of the change, provide notice to the borrower of the name, telephone number, and address of the party to whom subsequent payments or communications must be sent. 34 CFR § 682.208(h).

    **ANSWER:**  ASA admits that the foregoing requirements appear in 34 CFR § 682.208(h).

    147.    Neither Access Group, nor ACS, nor ASA ever provided the notice of servicing change required under 34 CFR § 682.208(h).

    **ANSWER:**  ASA denies that notice of a servicing change was required.

<u>Defendants Repeatedly Violated the 45-Day Rule</u>

    148.    34 CFR 682.411(b)(2) provides, in relevant part:

        At no point during the periods specified in paragraphs (c), (d), and (e) of this section may the lender permit the occurrence of a gap in collection activity, as defined in paragraph (j) of this section, of more than 45 days (60 days in the case of a transfer).

    **ANSWER:**  ASA admits the language quoted above appears in 34 CFR 682.411(b)(2).

    149.    Accordingly, Paragraph (j) defines a gap in collection activity as:

Page **27** of 46

(1) Beginning on the date that is the day after –

    (i)    The due date of a payment unless the lender does not know the borrower's address on that date;

    (ii)    The day on which the lender receives a payment on a loan that remains delinquent notwithstanding the payment;

    (iii)    The day on which the lender receives the correct address for a delinquent borrower;

    (iv)    The day on which the lender completes a collection activity;

    (v)    The day on which the lender receives a dishonored check submitted as a payment on the loan;

    (vi)    The expiration of an authorized deferment or forbearance period on a delinquent loan; or

    (vii)    The day the lender receives information indicating it does not know the borrower's current address.

**ANSWER:** ASA admits the language quoted above appears in 34 CFR 682.411(b)(2)

150.    The Defendants Access Group, ACS, and ASA permitted a gap in collection activity to occur in Plaintiff's student loan.

**ANSWER:** ASA denies the allegations of this paragraph as they relate to ASA.

151.    Access Group, ACS, and ASA, jointly and severally, violated the 45-day rule (60 days during the transfer period), because they ceased collection activity and did not practice due diligence in corresponding with Plaintiff.

**ANSWER:** ASA denies the allegations of this paragraph as they relate to ASA.

152.    On each occasion speaking with any of the Defendants or their agents, Plaintiff provided true and correct information as to his address and phone number.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

153.    In fact, Plaintiff's phone number and address stayed the same during the entire period in question, and to this day.

**ANSWER:** ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

Defendants Violated the Skip-Tracing Rule

154. 34 CFR 682.411(h) reads in relevant part:

**Skip-tracing.**

(1) Unless the [Final Demand] letter specified under paragraph (f) of this section has already been sent, within 10 days of its receipt of information indicating that it does not know the borrower's current address, the lender must begin todiligently [sic] attempt to locate the borrower through the use of effective commercial skip-tracing techniques. These efforts must include, but are not limited to, sending a letter to or making diligent effort to contact each endorser, relative, reference, individual, and entity, identified in the borrower's loan file, including the schoolsthe [sic] student attended. For this purpose, a lender's contact with a school official who might reasonably be expected to know the borrower's address may be with someone other than the financial aid administrator, and may be in writing or by phone calls. These efforts must be completed by the date of default with no gap of more than 45 days between attempts to contact those individuals or entities.

**ANSWER:** ASA admits that the foregoing language appears in 34 CFR 682.411(h).

155. On information and belief, which Plaintiff verily believes, the Defendants never sent the letter required under paragraph (f) (the "Final Demand Letter"), and therefore were required to use commercial skip-tracing techniques to locate Plaintiff.

**ANSWER:** ASA denies the allegations of this paragraph.

156. On information and belief, no Defendant ever utilized a commercial skip-tracing technique to locate Plaintiff.

**ANSWER:** ASA denies the allegations of this paragraph.

## COUNT I – VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT, 815 ILCS § 505/1, *et seq.*

**As to all Defendants**

157. Plaintiff restates and realleges paragraphs 1-156, as if fully set forth herein.

**ANSWER:** ASA restates and realleges its answers to paragraphs 1-156 as if fully set forth herein.

158. The Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA") forbids unfair or deceptive conduct in the course of commerce, and states in relevant part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damages thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act.

815 ILCS 505/2.

**ANSWER:** ASA admits the foregoing language appears in 815 ILCS 505/2.

159. Plaintiff is a consumer.

**ANSWER:** ASA neither admits nor denies the allegations of this paragraph as they state a legal conclusion as to which no answer is required.

160. Defendants' acts and omissions occurred in the course of trade and commerce.

**ANSWER:** ASA neither admits nor denies the allegations of this paragraph as they state a legal conclusion as to which no answer is required.

161. The terms "unfair" and "deceptive," as used in the ICFA, are disjunctive, not conjunctive; in other words, a practice may violate the prohibition against unfairness while not violating the prohibition against deception, and vice-versa.

**ANSWER:** ASA neither admits nor denies the allegations of this paragraph as they state a legal conclusion as to which no answer is required.

**Unfair Conduct**

162.     In determining whether a given course of conduct or act is unfair under the ICFA, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.

**ANSWER:**  ASA neither admits nor denies the allegations of this paragraph as they state

a legal conclusion as to which no answer is required.

163.     The published statement of factors considered by the Federal Trade Commission in measuring unfairness are:  (1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive or unscrupulous; (3) whether it causes substantial injury to consumers.  See also *Robinson v. Toyota Motor Credit*, 201 Ill.2d 403, 417-418, 775 N.E.2d 951, 961 (2002).

**ANSWER:**  ASA neither admits nor denies the allegations of this paragraph as they state

a legal conclusion as to which no answer is required.

164.     Courts may find unfairness even if the claim does not satisfy all three criteria.  *Id.*

**ANSWER:**  ASA neither admits nor denies the allegations of this paragraph as they state

a legal conclusion as to which no answer is required.

165.     For example, a "practice may be unfair because of the degree to which it meets one of the criteria or because to a letter extent it meets all three."  *Id.*

**ANSWER:**  ASA neither admits nor denies the allegations of this paragraph as they state

a legal conclusion as to which no answer is required.

166.     A court addressing an ICFA Unfairness claim must consider whether the challenged practice, "offends public policy as established by statutes, the common law or otherwise, or, in other words, whether it is at least within the penumbra of some established concept of unfairness."  *Boyd v. U.S. Bank, N.A.*, No. 10 C 3367, 787 F. Supp. 2d 747, 752 (N.D. Ill. Apr. 12, 2011) (citing *Ekl v. Knecht*, 585 N.E.2d 156, 163 (2nd Dist. 191).

**ANSWER:**  ASA neither admits nor denies the allegations of this paragraph as they state

a legal conclusion as to which no answer is required.

167.     Here, Defendants' unfair conduct includes, *inter alia*:

    a.   All Defendants failed to honor the agreed-upon forbearance;

    b.   Access Group and/or ACS failed to document the agreed-upon forbearance, in

violation of 34 CFR § 682.211(b)(1);

c. Access Group and/or ACS failed to record the terms of the agreed-upon forbearance in Plaintiff's file, in violation of 34 CFR § 682.211(b)(1);

d. Access Group and/or ACS failed to send required notices during forbearance, in violation of 34 CFR 682.211(e);

e. Access Group and ACS failed to exercise "due diligence" in the servicing on Plaintiff's student loan, in violation of 34 CFR § 682.411;

f. Access Group, ACS, and ASA failed to notify Plaintiff or transfer(s) of servicing and ownership of the subject student loan, in violation of 34 CFR § 682.208;

g. Access Group, ACS, and ASA permitted a gap in collection activity, in violation on 34 CFR § 682.411;

h. Access Group, ACS, and ASA failed to contact Plaintiff at all in Approximately 23 months, despite Defendants having Plaintiff's current mailing address and telephone number at all relevant times;

i. ACS declared a wrongful default as to Plaintiff's student loan account;

j. All Defendants added and attempted to collect wrongful late fees, collection fees, and interest on Plaintiff's student loan account;

k. ACS, ASA, and Delta Management failed or refused to provide a reasonable resolution in response to Plaintiff's attempts, both directly and through the CFPB;

l. Delta Management directed Plaintiff to correspond with ASA and ASA directed Plaintiff to Delta Management, in avoidance of providing answers or a resolution;

m. F.H. Cann, in its June 1, 2017 letter, stated that Plaintiff could "enjoy… deletion of default status to the major credit reporting bureaus," in direct contravention of the provisions of the PCA Manual.

**ANSWER:** ASA denies the allegations of this paragraph as they relate to ASA.

168. The foregoing conduct offends public policy, as enumerated by the Code of Federal Regulations and the common law.

**ANSWER:** ASA denies the allegations of this paragraph as they relate to ASA.

169.    The foregoing conduct is immoral, unethical, oppressive, and unscrupulous, in that it was done in attempt to profit from Plaintiff's student loan account.

**ANSWER:**  ASA denies that it took any action or engaged in any conduct that was "immoral, unethical, oppressive, and unscrupulous."

170.    The foregoing conduct caused substantial injury to Plaintiff, and would cause substantial injury to any consumer, as it has resulted in pecuniary damages, as well as lost opportunities, annoyance, anxiety, aggravation, and negative credit reporting.

**ANSWER:**  ASA denies that it took any action or engaged in any conduct that caused injury to Plaintiff.

171.    Therefore, Plaintiff's claims satisfy all three criteria for unfair conduct, taken individually.

**ANSWER:**  ASA denies that Plaintiff's claims satisfy any criteria for "unfair conduct" against ASA.

172.    In the alternative, Plaintiff's claims are unfair in the aggregate, because of the extent to which they meet any one of the unfairness criteria or because, to lesser extents, they meet all three.

**ANSWER:**  ASA denies that Plaintiff's claims satisfy any criteria for "unfair conduct" against ASA.

## Deceptive Conduct

173.    The elements of a Deceptive claim under the ICFA are:  (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce.

**ANSWER:**  ASA neither admits nor denies the allegations of this paragraph as they state a legal conclusion as to which no answer is required.

174.    Here, Defendants' deceptive conduct includes, *inter alia*:

   a.    Access Group stated that Plaintiff's forbearance request was approved, yet subsequently failed to honor, record, and/or document the agreed-upon forbearance;

b.   ASA stated that Plaintiff "had to be tracked down," despite all Defendants having Plaintiff's current mailing address and telephone number at all relevant times;

c.   Delta Management, ASA's collector, stated that ASA sent letters to Plaintiff, in contradiction to the statement that Plaintiff "had to be tracked down;"

d.   Delta Management stated that attempts were made to call Plaintiff and that his "voicemail wasn't set up," when Plaintiff's voicemail was working at all relevant times;

e.   ASA and Delta Management tried to collect the loan, claiming ownership of the loan and a specified amount due, while simultaneously stating that ACS never provided any paperwork related to the servicing and ownership of the subject loan to ASA or Delta Management;

f.   ACS stated that past due notices were sent and collection attempts were made, without any supporting documentation, despite no notices or attempts being made;

g.   ACS stated to the CFPB that, "if Plaintiff is able to provide proof that his loans were rehabilitated he should forward this information to us," when, on information and belief, all relevant information was in Defendants' possession and control.

**ANSWER:**   ASA denies the allegations of this paragraph that are directed to ASA.

175.   Defendants intended that Plaintiff rely on said representations.

**ANSWER:**   ASA denies that it made any statements to Plaintiff that it "intended Plaintiff

to rely on."

176.   Plaintiff indeed relied on the representation that his loan was in forbearance and stopped making payments.

**ANSWER:**   ASA denies it made any representation to Plaintiff about Plaintiff's loan being

in forbearance.

177.   Defendants deceived Plaintiff and continue to attempt to collect an inflated student loan debt.

**ANSWER:**   ASA denies the allegations of this paragraph

178.    At all relevant times, Defendants knew that their acts and omissions were in contravention of the Code of Federal Regulations' provisions governing the servicing of guaranty agency loans.

**ANSWER:**  ASA denies the allegations of this paragraph.

179.    At all relevant times, Defendants knew that their practices were non-compliant with the requirements of the provisions of 34 CFR 682.401 – Basic program agreement, which states at (b)(10)(i):

      (i)      The guaranty agency shall establish, disseminate to concerned parties, and enforce standards and procedures for –

                        \*\*\*

      (E)     The exercise of due diligence by lenders in making, servicing, and collecting loans;

**ANSWER:**  ASA denies the allegations of this paragraph.

180.    The deception occurred in the course of trade and commerce.

**ANSWER:**  ASA denies the allegations of this paragraph.

181.    Defendants' conduct directly caused substantial injury to Plaintiff, as it has resulted in pecuniary damages, as well as lost opportunities, annoyance, anxiety, aggravation, and negative credit reporting.

**ANSWER:**  ASA denies the allegations of this paragraph.

### ASA'S FIRST AFFIRMATIVE DEFENSE TO COUNT I

Plaintiff's claims against ASA in Count I of the Complaint are pre-empted by the federal

statutes and regulations governing the Consolidation Loan Program, including 20 U.S.C. § 1098g.

### ASA'S SECOND AFFIRMATIVE DEFENSE TO COUNT I

Plaintiff's claims against ASA in Count I of the Complaint are barred by the three-year

statute of limitation provision applicable to claims brought under that Act.

### COUNT II – VIOLATIONS OF THE FEDERAL DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692, *et seq.*

### As to Defendants ASA, Delta Management, and F.H. Cann

182.    Plaintiff reasserts and realleges paragraphs 1-156, as if fully set forth herein.

**ANSWER:**  ASA reasserts its answers to Paragraphs 1-156 above as its answer to this paragraph.

183.    Plaintiff is a "consumer" as that term is defined by § 1692a(3) of the Federal Debt Collection Practices Act ("FDCPA").

**ANSWER:**  ASA neither admits nor denies the allegations of this paragraph as they state a legal conclusion as to which no answer is required.

184.    The subject student loan is a "debt," as that term is defined by § 1692a(5) of the FDCPA.

**ANSWER:**  ASA neither admits nor denies the allegations of this paragraph as they state a legal conclusion as to which no answer is required.

185.    Defendants ASA, Delta Management, and F.H. Cann are "debt collectors," as that term is defined by § 1692a(6) of the FDCPA, because they are regularly engaged in the collection of debts for others and they took over the servicing and/or ownership of the subject debt when it was purportedly in default.

**ANSWER:**  ASA denies that it is a "debt collector."

186.    Section 1692e of the FDCPA provides, in relevant part:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt.  Without limiting the general application of the foregoing, the following conduct is a violation of this section:

*** 

(2) The false representation of –

(A) the character, amount, or legal status of any debt; or

(B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

*** 

(4)   The representation or implication that nonpayment of any debt will result

in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages or any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken.

***

(7)    The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8)    Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

***

(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

**ANSWER:**    ASA admits that Section 1692e of the FDCPA contain the foregoing provisions, but denies those provisions apply to ASA.

187.    Accordingly, Defendants ASA, Delta Management, and F.H. Cann violated he FDCPA by, *inter alia*:

a.    Mischaracterizing Plaintiff's loan as in default, despite an agreed-upon forbearance;

b.    Adding and attempting to collect wrongful late fees, collection fees, and interest;

c.    Threatening, *inter alia*, garnishment of wages, seizure of tax refunds (and actually seizing another taxpayer's refund in relation to Plaintiff's student loan), no future federal student aid, and loss of deferment or, ironically, forbearance options;

d.    Stating that Plaintiff "had to be tracked down," implying that Plaintiff was evading his financial responsibility; this implication is particularly disgraceful, considering Plaintiff's immaculate record of timely payments prior to requesting and being approved for a forbearance;

e.    Stating that letters were sent to Plaintiff when they were not;

Page **37** of 46

f.   Failing to report the subject debt as disputed; and

g.   Attempting to collect the subject debt, despite having no documentation evincing the servicing and ownership thereof.

h.   Sending, in the case of F.H. Cann, a letter stating or implying to a borrower that the default information reported by the original lender or by the guaranty agency or Department will be deleted or expunged.

**ANSWER:**  ASA denies the allegations of this paragraph to the extent they are directed to ASA.

188.   Additionally, section 1692g(b) provides:

(b)   Disputed Debts

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.  Collection activities and communications that do not otherwise violate this subchapter may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor.  Any collection activities and communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt or request the name and address of the original creditor.

**ANSWER:**  ASA admits section 1692g(b) contains the foregoing language, but denies that language applies to ASA.

189.   As set forth *supra*, in response to F.H. Cann's April 4, 2017 letter, Plaintiff sent a letter to F.H. Cann on April 27, 2017 disputing the stated amount owed.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

190.    However, F.H. Cann failed to provide a validation of the debt to Plaintiff, in violation of the FDCPA.

**ANSWER:**  ASA is without knowledge or information sufficient to truthfully admit or deny the allegations of this paragraph.

### ASA'S FIRST AFFIRMATIVE DEFENSE TO COUNT II

As a guaranty agency, ASA's collection efforts are incidental to a "bona fide fiduciary obligation" to the United States Department of Education.  Therefore, ASA is not a "debt collector" under the FDCPA.  15 U.S.C. § 1692a(6)(F)(i).  *See, e.g., Seo v. Educ. Credit Mgmt Corp. 2016 WL 521065, at \*2 (N.D. Ill. 2016).*

### COUNT III – BREACH OF CONTRACT
#### As to Defendants Access Group and ACS

ASA makes no response to this Count because it is not directed to ASA.

### COUNT IV – PROMISSORY ESTOPPEL
#### As to Defendants Access Group and ACS

ASA makes no response to this Count because it is not directed to ASA.

### COUNT V – FRAUDULENT MISREPRESENTATIONS

#### As to Defendants Access Group, ACS, ASA, and Delta Management

210.    Plaintiff reasserts and realleges paragraphs 1-156, as if fully set forth herein.

**ANSWER:**  ASA restates its answers to Paragraphs 1-156 above as its answer to this paragraph.

211.    Defendants owed, and owe, a duty to Plaintiff to provide true and accurate information regarding his student loan account.

**ANSWER:** ASA admits it has certain obligations under the statutes and regulations governing the FFELP Program, and denies the allegation of this paragraph to the extent it refers to any other duty or obligation.

212. As set forth *supra*, Defendants made numerous false statements of material fact to Plaintiff.

**ANSWER:** ASA denies the allegations of this paragraph as they relate to ASA.

213. The misrepresentations include, *inter alia*:

    a. Access Group stated that Plaintiff's forbearance request was approved, yet subsequently failed to honor, record, and/or document the agreed upon forbearance;

    b. ASA stated Plaintiff "had to be tracked down," despite Defendants having Plaintiff's current mailing address and telephone number at all relevant times, both provided by Plaintiff as well as available in Plaintiff's credit reports;

    c. ACS stated that letters were sent to Plaintiff, in contradiction to the statement that Plaintiff "had to be tracked down";

    d. Delta Management stated that attempts were made to call Plaintiff and that his "voicemail wasn't set up," when Plaintiff's voicemail was working at all relevant times;

    e. ASA and Delta Management claimed ownership and a specific amount due, while also stating that ACS never provided any paperwork related to the servicing and ownership of the subject loan to ASA or Delta Management;

    f. ACS stated hat past due notices were sent and collection attempts were made, without any supporting documentation;

    g. ACS stated to the CFPB that, "if Plaintiff is able to provide proof that his loans were rehabilitated he should forward this information to us," when, on information and belief, all relevant information remains Defendants' possession and control.

**ANSWER:** ASA denies that it made the statements attributed to ASA in this paragraph.

214. Defendants knew said statements were false or were made recklessly and without regard for their truth.

**ANSWER:** ASA denies it made any statements that were false or made recklessly and without regard for their truth.

215.    Defendants intended that Plaintiff rely upon the false statements.

**ANSWER:** ASA denies the allegations of this paragraph to the extent they are directed against ASA.

216.    Plaintiff reasonably relied upon the false statements.

**ANSWER:** ASA denies Plaintiff reasonably relied on a false statement by ASA.

217.    Defendants' false statements damaged Plaintiff.

**ANSWER:** ASA denied it made any false statements that damaged Plaintiff.

### ASA'S FIRST AFFIRMATIVE DEFENSE TO COUNT V

To the extent any portion of Count V seeks to hold ASA liable under state law for actions taken by ASA in compliance with the statutes and regulations governing the FFELP Program, such claims are pre-empted by the statutes and regulations governing the program, including 20 U.S.C. § 1098(g).

### COUNT VI – NEGLIGENT MISREPRESENTATIONS

**(In the alternative to Count V)**

**As to Defendants Access Group, ACS, ASA, and Delta Management**

218.    Plaintiff reasserts and realleges paragraphs 1-156, as if fully set forth herein.

**ANSWER:** ASA restates its answers to Paragraphs 1-156 above as its answer to this paragraph.

219.    Defendants owed, and owe, a duty to Plaintiff to provide true and accurate information regarding his student loan account.

**ANSWER:** ASA admits it has certain obligations under the statutes and regulations governing the FFELP Program, and denies the allegation of this paragraph to the extent it refers to any other duty or obligation.

220.    Defendants made numerous negligent, false, and material statements of fact regarding his student loan account.

**ANSWER:** ASA denies the allegations of this paragraph to the extent they are directed against ASA.

221.    The misrepresentations include, *inter alia*:

    a.    Access Group stated that Plaintiff's forbearance request was approved, yet subsequently failing to honor, record, and/or document the agreed upon forbearance;

    b.    ASA stated that Plaintiff "had to be tracked down," despite Defendants having Plaintiff's current mailing address and telephone number at all relevant times, both provided by Plaintiff as well as available on his credit reports;

    c.    ACS stated that letters were sent to Plaintiff, in contradiction to the statement that Plaintiff "had to be tracked down;"

    d.    Delta Management stated that attempts were made to call Plaintiff and that his "voicemail wasn't set up," when Plaintiff's voicemail was working at all relevant times;

    e.    Delta Management and ASA claimed ownership and a specific amount due, while also stating that ACS never provided any paperwork related to the servicing and ownership of the subject loan to ASA or Delta Management;

    f.    ACS stated that past due notices were sent and collection attempts were made, without any supporting documentation;

    g.    ACS stated that, "if Plaintiff is able to provide proof that his loans were rehabilitated he should forward this information to us," when, on information and belief, all relevant information is in Defendants' possession and control.

**ANSWER:** ASA denies that it made the statements attributed to ASA in this paragraph

222.    If Defendants did not know the foregoing statements were false, they could have known with minimal diligence and inquiry.

**ANSWER:** ASA denies it made any false statements.

223.    Defendants intended that Plaintiff rely upon the false statements.

**ANSWER:** ASA denies it made any false statements upon which it intended Plaintiff to rely.

224.    Plaintiff reasonably relied upon the false statements.

**ANSWER:** ASA denies that it made any false statements upon which Plaintiff relied.

225.    Defendants' false statements damaged Plaintiff.

**ANSWER:** ASA denies it made any false statements which damaged Plaintiff.

### ASA'S FIRST AFFIRMATIVE DEFENSE TO COUNT VI

To the extent any portion of Count V seeks to hold ASA liable under state law for actions taken by ASA in compliance with the statutes and regulations governing the FFELP Program, such claims are pre-empted by the statutes and regulations governing the program, including 20 U.S.C. § 1098(g).

### COUNT VII – FRAUDULENT CONCEALMENT

#### As to Defendants Access Group, ACS, and ASA

226.    Plaintiff reasserts and realleges paragraphs 1-156, as if fully set forth herein.

**ANSWER:** ASA restates its answers to paragraph 1-156 above as its answer to this paragraph.

227.    As set forth *supra*, Defendants concealed certain material facts from Plaintiff regarding this student loan account.

**ANSWER:** ASA denies it concealed and material facts from Plaintiff.

228.    The concealed material facts include, *inter alia*:

   a.    Access Group concealed the fact that the subject student loan was not granted a forbearance, despite the telephone conversation to the contrary;

Page **43** of **46**

    b.   Access Group and ACS concealed the fact that subject student loan was transferred to a new servicer;

    c.   ACS and ASA concealed the fact that the subject student loan was transferred to a new owner;

    d.   Access Group and ACS concealed the fact that the subject loan account was in arrears;

    e.   ACS and ASA concealed the fact that the subject student loan was declared to be in default;

    f.   Access Group, ACS, and ASA concealed the fact that late fees and collection fees were being added to the subject student loan.

**ANSWER:**  ASA denies the allegations of this paragraph.

229.    Defendants had a duty to disclose the foregoing material facts.

**ANSWER:**  ASA denies the allegations of this paragraph.

230.    The concealments were intended to induce a false belief, under circumstances creating a duty to speak.

**ANSWER:**  ASA denies the allegations of this paragraph.

231.    Plaintiff could not have discovered the truth through a reasonable inquiry or inspection.

**ANSWER:**  ASA denies the allegations of this paragraph.

232.    The concealed information was such that Plaintiff would have acted differently had he been aware of it.

**ANSWER:**  ASA denies that there was any "concealed information."

233.    It should be noted that despite any allegations by Defendants that Plaintiff "had to be tracked down," Defendants had no problem reaching Plaintiff (at the same address he had at all relevant times and was provided to Access Group in December, 2011 and also reported on his Transunion credit report on December 8, 2011) after the purported default.

**ANSWER:**  ASA denies that it made any representation to Plaintiff that "he had to be

tracked down."

**ASA'S FIRST AFFIRMATIVE DEFENSE TO COUNT VII**

Page **44** of **46**

To the extent any portion of Count V seeks to hold ASA liable under state law for actions taken by ASA in compliance with the statutes and regulations governing the FFELP Program, such claims are pre-empted by the statutes and regulations governing the program, including 20 U.S.C. § 1098(g).

WHEREFORE, ASA requests this Court to enter judgment in its favor and against Plaintiff, and award ASA its costs, interests and attorney fees and such additional and further relief as this Court deems appropriate.

**MASSACHUSETTS HIGHER EDUCATION
ASSISTANCE CORPORATION, Defendant**

By:   /s/Mark E. Shure
        One of Its Attorneys

**Mark E. Shure (ARDC No. 06188755)**
**Edwards Maxson Mago & Macaulay, LLP**
300 N. LaSalle Street, Suite 4925
Chicago, Illinois 60654
(708) 528-6949
mshure@em3law.com

## CERTIFICATE OF SERVICE

      The undersigned, an attorney, certifies that on April 18, 2018, the foregoing document was filed through the U.S. District Court for the Northern District of Illinois CM/ECF electronic document filing system, which will serve notice thereof upon all the parties and attorneys of record

By:    /s/ Mark E. Shure       
       Mark E. Shure

       Edwards Maxson Mago & Macaulay LLP
       300 N. LaSalle St., Suite 4925
       Chicago, IL 60654
       (708) 529-6949
       mshure@em3law.com
       Attorney for Massachusetts Higher Education
       Assistance Corporation