# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JEFFREY FLEISCHER,

        Plaintiff,

   v.

ACCESSLEX INSTITUTE d/b/a ACCESS
GROUP, CONDUENT EDUCATION
SERVICES, LLC f/k/a ACS EDUCATION
SERVICES, MASSACHUSETTS HIGHER
EDUCATION ASSISTANCE CORPORATION
d/b/a AMERICAN STUDENT ASSISTANCE,
DELTA MANAGEMENT ASSOCIATES, INC.,
and F.H. CANN & ASSOCIATES, INC.,

        Defendants.

No. 17 CV 8295

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

Jeffrey Fleischer brings federal and state-law claims against the servicers of his student-loan account, Access Group and Conduent; the loan's guarantor, American Student Assistance; and two private collection agencies, Delta, and F.H. Cann. Conduent and F.H. Cann move to dismiss all counts asserted against them, and Delta moves for judgment on the pleadings. For the reasons discussed below, all three motions are granted in part, denied in part.

## I.    Legal Standards

A complaint may be dismissed pursuant to Rule 12(b)(6) if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Rule 12(c) permits a party to move for judgment after the answer has been filed. Fed. R. Civ. P. 12(c). The same standard applies to both. *Buchanan-Moore v. Cty. of Milwaukee*, 570 F.3d 824,

827 (7th Cir. 2009). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). All reasonable inferences are drawn in favor of the non-movant. *Squires-Cannon v. Forest Preserve Dist. of Cook Cty.*, 897 F.3d 797, 802 (7th Cir. 2018). "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

## II.   Facts

Plaintiff Jeffrey Fleischer consolidated several undergraduate and graduate student loans with defendant Access Group sometime around June 1, 2004. [59] ¶ 32.[1] After consolidating his loans, Fleischer made timely payments through November 2011, when he applied for a forbearance. *Id*. ¶¶ 34–46. When Fleischer called to follow up on his application, an Access Group representative informed him that: (1) his application for forbearance was accepted; (2) the loan's interest rate would remain at 2.5%; (3) the forbearance would last up to three years; and (4) Access Group had sent the forbearance-acceptance letter to Fleischer's previous address. *Id*. ¶¶ 47–48. Fleischer gave the representative his current address and phone number, which she

---

[1] Bracketed numbers refer to entries on the district court docket. The operative complaint is [59].

read back to him to confirm. *Id.* ¶ 49. At that time, Fleischer's student-loan balance was roughly $38,000. *Id.* ¶ 50. According to a press release, Access Group began using defendant Conduent Education Services, LLC[2] to service its loans in December 2011. *Id.* ¶¶ 51–52. Neither informed Fleischer about this change, and he received no correspondence from anyone regarding his account for the next 23 months. *Id.* ¶¶ 54–55.

On November 8, 2013, defendant Delta Management Associates, Inc.—who Fleischer had never heard of—sent Fleischer a letter saying his loan: was in default, was now serviced by Conduent, and was owned by another entity Fleischer had never heard of, defendant American Student Assistance. *Id.* ¶ 58. The letter also stated that the balance was approximately $51,000. *Id.* Fleischer was alarmed by the new balance because at the 2.5% interest rate his loan should have been less than $40,000. *Id.* ¶ 59. Fleischer called Access Group that day, and Access Group confirmed that the loan had been transferred and told him he should call Conduent. *Id.* ¶ 61. Also the same day, Fleischer filed a complaint with the Consumer Fraud Protection Bureau. *Id.* ¶ 63. Four days later, Fleischer called Delta and spoke with a representative, Jose Torres, who told him he would note that the account was in dispute. *Id.* ¶ 64. Fleischer also spoke with Irene Metcalfe, a supervisor at Delta, who acknowledged that, given Fleischer's excellent credit she understood his confusion and told him to call American Student Assistance, saying that it was good at dealing

---

[2] Conduent was formerly known as ACS Education Services, and Fleischer refers to it as ACS.

with these types of situations. *Id.* ¶ 65. On November 14, Fleischer called American Student Assistance and spoke with a representative (who refused to disclose his name) and told him that he had never heard of American Student Assistance, Conduent, or Delta. *Id.* ¶¶ 66–67. No one that Fleischer spoke with during these conversations provided him with any information about his loan, and he retained an attorney. *Id.* ¶¶ 68, 71.

Fleischer's attorney sent a letter to American Student Assistance and Delta on November 27, explaining the situation and disputing the loan balance. *Id.* ¶ 72. After four months, Fleischer's attorney received a letter from American Student Assistance that failed to address any of the issues raised and reiterated the balance and fees without acknowledging the forbearance agreement or the lack of notice to Fleischer about the changes to his account. *Id.* ¶¶ 74, 76. Fleischer, through his attorney, again disputed the loan, offering to pay the legitimate balance, but American Student Assistance demanded that they speak with Delta instead. *Id.* ¶¶ 77–78. In a phone conversation, a Delta representative told Fleischer's attorney that American Student Assistance had sent letters to Fleischer's new address beginning in March 2013 and that there had been attempts to call Fleischer, but his voicemail wasn't set up—both of which were false. *Id.* ¶¶ 84–86. In another conversation, a Delta representative said that Conduent had not provided Delta or American Student Assistance with any paperwork regarding the servicing or ownership, and so Delta could not give Fleischer any relevant documents. *Id.* ¶ 87.

After those conversations, Fleischer received no correspondence from anyone, including the CFPB, regarding his loan for approximately two years. *Id.* ¶ 88. In February 2017, Fleischer wrote to Senators Dick Durbin and Tammy Duckworth, who promptly responded saying they had forwarded his requests to the CFPB. *Id.* ¶¶ 89–90. On April 8, 2017—over three years after filing his CFPB complaint—Fleischer received a letter dated March 29, 2017 from the agency with Conduent's response attached. *Id.* ¶ 91. Conduent's response claimed that Fleischer's student loan account became past due in March 2012 and that past due notices had been sent and collection attempts made. *Id.* ¶ 92. The response did not include any supporting documentation. *Id.* It also said that if Fleischer was "able to provide proof that his loans were rehabilitated he should forward this information" to Conduent. *Id.* ¶ 93.

Two days later, Fleischer received a letter from defendant F.H. Cann attempting to collect on the account. *Id.* ¶ 95. The Department of Education contracts with private collection agencies, like F.H. Cann and Delta, to collect on defaulted student loans. *Id.* ¶¶ 100–101. The Department provides guidelines, policies, and procedures to these collection agencies in a Private Collection Agency Procedures Manual. *Id.* ¶ 102. The manual provides: "Collectors must not state or imply to borrowers that the default information reported by the original lender (e.g., the bank that made the [loan]) or by the guaranty agency or Department will be deleted or expunged before the applicable 7-year period has run." *Id.* ¶ 104. In a letter sent on June 1, 2017, F.H. Cann stated, "American Student Assistance has entered into an agreement with the U.S. Department of Education to participate in the federal loan

5

rehabilitation program. Under the program, borrowers who make 9 qualifying payments over a 10 month period can have their defaulted loans rehabilitated and enjoy benefits including: Deletion of default status to the major credit reporting bureaus, Avoidance of involuntary wage garnishment, Removal from the Treasury Offset Program, Return to standard loan servicing (no more collection agencies)." *Id.* ¶ 99. When Fleischer disputed the amount due on his account, F.H. Cann reiterated that the loan was in default without providing any documentation, failing to validate the debt. *Id.* ¶¶ 97–98.

Also in June 2017, the Department of Treasury sent Fleischer a letter saying it had seized his federal income tax refund for $2,223.71 and applied it to his student loan account. *Id.* ¶ 106. In September, the IRS sent a letter saying it had sent Fleischer a refund in the same amount in error and demanding the money back, though it later rescinded that demand. *Id.* ¶¶ 107, 108.

## III. Analysis

Fleischer brings claims under the Illinois Consumer Fraud and Deceptive Practices Act against F.H. Cann, Delta, and Conduent; claims under the Fair Debt Collection Practices Act against F.H. Cann and Delta; breach-of-contract and promissory-estoppel claims against Conduent; fraudulent and negligent-misrepresentation claims against Delta; and a fraudulent-concealment claim against Conduent. Delta moves for judgment on the pleadings on all counts, and F.H. Cann and Conduent move to dismiss all counts.

### A.    The Illinois Consumer Fraud Act

To state an ICFA claim a plaintiff must allege: (1) the defendant engaged in a deceptive or unfair act or practice; (2) the defendant intended that the plaintiff rely on the deceptive or unfair practice; and (3) the deceptive or unfair practice occurred during a course of conduct involving trade or commerce. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417 (2002). When asserting a private cause of action, a plaintiff must also allege that the defendant proximately caused actual damages. *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 513–14 (7th Cir. 2006). To determine whether conduct is unfair, Illinois courts consider whether the practice offends public policy; is immoral, unethical, oppressive or unscrupulous; and causes substantial injury to customers. *Robinson*, 201 Ill.2d at 417–418. When alleging that an injury is substantial, a plaintiff must also show he could not avoid the injury. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill.2d at 418 (quoting *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 106 (1992)).

### 1.    *Conduent*

Fleischer alleges that Conduent acted unfairly by failing to honor the agreed-upon forbearance, failing to communicate with him about the servicing of his loan, and failing to timely respond to his CFPB complaint. As evidence that Conduent's actions violate public policy, Fleischer points to Conduent's failure to comply with

specific provisions of the Higher Education Act implementing regulations. For example, Conduent failed to document and record the terms of the forbearance, to contact Fleischer every 180 days while his loan was in forbearance, and to send at least one written notice during the first 15 days of his delinquency. [59] ¶¶ 124–25, 131, 167. Public policy, in the ICFA context, means policy "as established by statutes, the common law or otherwise." *Ekl v. Knecht*, 223 Ill.App.3d 234, 242 (2d Dist. 1991). In other words, courts consider whether the practice "is at least within the penumbra of some established concept of unfairness." *Id.* The Higher Education Act and the regulations Fleischer relies on demonstrate a public policy in ensuring timely and accurate disclosures in student-loan-administration communications. *See, e.g.*, 34 C.F.R. §§ 682.211(b), (e); 682.411(d), (e), (f). Though not every violation of the Higher Education Act regulations necessarily constitutes an unfair practice under ICFA, Fleischer has adequately alleged that Conduent's repeated practice of failing to notify him about changes to his account and to respond to the CFPB complaint violates the policy of transparency and open communication established by the Act and its regulations.

Fleischer has also plausibly alleged that this practice was immoral, unethical, oppressive or unscrupulous and that it caused him substantial and unavoidable injury. A practice is oppressive if it leaves a plaintiff with "no reasonable alternative." *See People ex rel. Fahner v. Hedrich*, 108 Ill.App.3d 83, 90 (2d Dist. 1982). Conduent failed to inform Fleischer about important changes to his account, making it impossible for him to prevent the wrongful entry of default and subsequent fees. Once

Fleischer found out about the discrepancies in his account, he repeatedly tried to communicate, in one way or another, with each entity involved. But Conduent failed to provide relevant documentation to Fleischer and to the debt-collection agencies assigned to collect on his loan. And these actions, Fleischer asserts, resulted in an increased loan balance and damage to his credit. Together, this is enough to allege Conduent's actions were unfair. Fleischer claims that Conduent intended him to rely on its failure to honor his forbearance and communicate with him, allowing fees and interest to accumulate on his account. He further alleges that he relied on these miscommunications, assuming the lack of notice meant his forbearance was being honored. Based on these allegations, Fleischer has stated a claim based on Conduent's unfair conduct.

But not one based on deception. A deceptive act includes "the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression, or omission." 815 ILCS 505/2. Fleischer alleges that Conduent's assertion that he should, if possible, provide proof that his loan had been rehabilitated was deceptive because "on information and belief, all relevant information was in Defendants' possession and control." [59] ¶ 174(g). He alleges it was false to say that past notices had been sent and collection attempts made. Fleischer does not plausibly allege, however, that Conduent intended him to rely on these statements or any omissions of material facts they may contain, or that he did, causing him actual damages. Fleischer learned of these statements in April 2017— long after his loan defaulted and he became aware of his balance. Without alleging

intent and reliance, Fleischer has failed to state a claim for deceptive conduct against Conduent.

    2.    *F.H. Cann*

Fleischer alleges F.H. Cann engaged in unfair and deceptive practices by sending him a letter indicating that he could have his loan rehabilitated and the default information on his account deleted. Fleischer argues this statement was unfair because it violated the public policy as established by the Private Collection Agency Manual, which prohibits collection agencies from stating or implying to borrowers that default information will be deleted or expunged before the applicable 7-year period has run. As discussed with respect to the Higher Education Act regulations, a violation of a specific provision in this manual does not necessarily give rise to an ICFA claim. While there may be a general policy in favor of debt collectors providing accurate statements to debtors, Fleischer's argument centers around the fact F.H. Cann's statement violated the manual, and not how it violated some broader policy. Further, Fleischer does not allege facts indicating that he relied on this statement or that it caused him any damages. He did not take F.H. Cann up on its offer and attempt to rehabilitate his loan, and he does not point to any other indicia of his reliance.

Fleischer's allegation that all defendants failed to honor the forbearance and attempted to collect on an inflated student-loan debt also fail to support a claim against F.H. Cann. These allegations are unsupported and insufficient to meet the particularity standards of Rule 9(b). Fleischer fails to allege any facts to support his

contention that F.H. Cann, a debt collector that relied on statements from the loan's guarantor, was responsible for the failure to honor his loan forbearance. And he does not allege facts to support his contentions that he relied on F.H. Cann's attempt to collect on his debt or how he was damaged from those attempts. Without alleging reliance on, or proximately caused damages from, conduct attributable to F.H. Cann as distinct from the other defendants, Fleischer has not adequately stated a claim.

### 3.    Delta

Fleischer alleges that Delta acted unfairly by failing to provide a reasonable resolution to his communications and directing him to correspond with American Student Assistance while American Student Assistance told him to talk to Delta. He alleges Delta acted deceptively by saying that defendants had tried to call him but his voicemail was not set up and that American Student Assistance had sent him letters. He also points out that Delta tried to collect on the loan and made specific representations regarding the loan without possessing any relevant paperwork. In one sentence in a footnote, Delta asserts that if Fleischer's ICFA claim against Delta is not time-barred, it also fails to meet Rule 9(b) particularity requirements. *See* [37] at 9, n. 5. Because "perfunctory and undeveloped arguments . . . are waived," *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991), Delta is left with its argument that Fleischer's ICFA claim is time-barred.

4.    *Statute of Limitations*

Conduent and Delta argue that Fleischer's ICFA claims with respect to them are barred by the statute of limitations. "A statute of limitations provides an affirmative defense, and a plaintiff is not required to plead facts in the complaint to anticipate and defeat affirmative defenses." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Dismissal under 12(b)(6) is appropriate only "when a plaintiff's complaint nonetheless sets out all of the elements of an affirmative defense." *Id*. A consumer-fraud-act claim must be brought within three years of the date when the claim accrues. 815 ILCS 505/10a(e). A claim generally accrues when a party knows or reasonably should know that an injury has occurred and that it was wrongfully caused. *Knox College v. Celotex Corp.*, 88 Ill.2d 407, 415–16 (1981). Fleischer filed his original complaint on November 15, 2017. Assuming his amended complaint relates back to the original complaint, *see* Fed. R. Civ. P. 15(c)(1)(B), the ICFA claims must have accrued after November 15, 2014, to be timely.

Fleischer learned of some of the misconduct he complains about before November 2014. From Delta's November 2013 letter, Fleischer knew that Conduent was servicing his loan, that his loan was in default, and therefore, that his forbearance had not been honored. Fleischer alleges that he met his obligations to the agreed-upon forbearance, so when he learned his loan balance had grown to $51,000 he reasonably should have known that an injury occurred and that it was wrongfully caused. Fleischer argues that either equitable tolling or equitable estoppel saves his claim, but neither applies. Equitable tolling extends the time for which a plaintiff can

12

bring his action if, despite all due diligence the plaintiff was unable to obtain vital information bearing on the *existence* of a claim. *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450–51 (7th Cir. 1990). It also applies where a plaintiff knows he was injured during the limitations period but does not know it was from wrongdoing or that it was from wrongdoing by the defendant. *Id.* at 451. A claim accrues once a plaintiff is aware of a possible violation, and the "qualification 'possible' is important. If a plaintiff were entitled to have all the time he needed to be *certain* his rights had been violated, the statute of limitations would never run." *Id.* Fleischer may not have known some of the precise details pertaining to his claim on November 8, 2013, but he should have known that he was injured, and that the injury was at least possibly caused by wrongdoing. As a result, equitable tolling does not extend the statute of limitations.

Equitable estoppel, also referred to as fraudulent concealment, is based on the underlying principle that a defendant should not benefit from his inequitable conduct. *Wheeldon v. Monon Corp.*, 946 F.2d 533, 537 (7th Cir. 1991). It applies when the defendant takes active steps to prevent the plaintiff from suing on time, such as hiding evidence or promising not to plead the statute of limitations. *Id.*; *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1174 (7th Cir. 1999). To the extent concealment is part of the original fraud, the concealing acts merely postpone the date of accrual by preventing discovery; they do not justify equitable estoppel. *Cada*, 920 F.2d at 451 ("Fraudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the

discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff from suing in time."). In justifying applying equitable estoppel against Conduent and Delta, Fleischer points to the same conduct that makes up his underlying ICFA claims: that they delayed responding to his attempts at communication and failed to provide him with important information about the changes to his account. Because he has not pointed to conduct apart from the violation alleged, equitable estoppel is not warranted.

To the extent Conduent's failure to communicate with the CFPB could be viewed as an attempt to prevent Fleischer from filing as opposed to part of underlying offense, Fleischer's reliance on Conduent's action was not reasonable. *See Hamilton v. Komatsu Dresser Industries, Inc.*, 964 F.2d 600, 605 (7th Cir. 1992) ("To invoke the doctrine of equitable estoppel, the plaintiff[ ] must show (1) improper conduct by [the defendant] and (2) their actual and reasonable reliance on such conduct."). Fleischer waited three years before receiving a response to his CFPB complaint. By the time he received the response, Fleischer had retained an attorney and spoken with representatives from Access Group, Delta, and American Student Assistance, all of whom had confirmed that the information in Delta's November 8 letter was accurate. Unlike the plaintiff in *Wheeldon*, who reasonably relied on the fact that the defendant would comply with a specific response deadline set by the agency, there was no reason for Fleischer to wait three years for a response from CFPB to file his lawsuit and no indication that his decision to wait this long was reasonable. And as to Fleischer's

14

allegation that Delta has failed to comply with the Mandatory Initial Discovery Project in this lawsuit, this has nothing to do with Delta's conduct in delaying Fleischer from filing his lawsuit; it took place once the suit was underway.

Though Fleischer was aware of the possibility of his claim and neither equitable estoppel nor equitable tolling applies, the allegations in his complaint are consistent with a continuing violation, which delays accrual of the statute of limitations until (1) the date of the last injury or (2) when the tortious acts cease. *Gredell v. Wyeth Laboratories, Inc.*, 346 Ill.App.3d 51, 59 (1st Dist. 2004). As discussed, Fleischer alleges that Conduent's failure to provide a timely and accurate response to the CFPB inquiry culminated in 2017, well within the statute of limitations. And it is not clear from the complaint that communications with Delta did not continue past November 2014. Because these communications are part of defendants' ongoing failure to truthfully and adequately communicate with Fleischer regarding his loans, the continuing violations doctrine may apply. And as "long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute of limitations defense, questions of timeliness are left for summary judgment." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015).

### B.    The Fair Debt Collection Practices Act

Fleischer brings FDCPA claims against F.H. Cann and Delta. The FDCPA seeks to "eliminate abusive debt collection practices by debt collectors" and forbids "any false, deceptive, or misleading representation or means in connection with the

collection of any debt," including specifically, falsely representing "the character, amount, or legal status of any debt." 15 U.S.C. §§ 1692(e), 1692e. "'[I]f a statement would not mislead the unsophisticated consumer, it does not violate the [Act]—even if it is false in some technical sense.' A statement cannot mislead unless it is material, so a false but non-material statement is not actionable." *Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 758 (7th Cir. 2009) (quoting *Wahl v. Midland Credit Mgmt., Inc.*, 556 F.3d 643, 646 (7th Cir. 2009)). There are three categories of statements: (1) statements that are plainly not misleading or deceptive, where courts determine legality, (2) statements that are possibly misleading to the unsophisticated consumer, which require a plaintiff to provide extrinsic evidence to prove the statements are misleading, and (3) clearly confusing statements, where a plaintiff need not present extrinsic evidence. *Ruth v. Triumph P'ships*, 577 F.3d 790, 800–801 (7th Cir. 2009).

FDCPA claims must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Delta argues that Fleischer's FDCPA claim is time-barred, and Fleischer makes the same arguments for equitable tolling and estoppel as discussed above. It is clear from the complaint that all of Delta's communications with Fleischer occurred before November 2016; Fleischer alleges that before receiving the CFPB's response in April 2017, he had not heard anything regarding his loan from any of the defendants for two years. [59] ¶ 88. As a result, Fleischer's FDCPA claim against Delta is barred by the statute of limitations.[3]

---

[3] Elsewhere in his complaint, Fleischer alleges, on information and belief, that one or more of the defendants wrongfully referred his loan to the IRS, [59] ¶¶ 106–109, and that this threat amounts to a violation of the FDCPA. *Id.* ¶ 187(c). Fleischer did not respond to F.H.

For his claim against F.H. Cann, Fleischer again relies on the Private Collection Agency Manual, arguing that F.H. Cann's violation of the manual constitutes a violation of the FDCPA. The FDCPA is not a mechanism for matters governed elsewhere by state and federal law. *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 875 (7th Cir. 2015). The manual's prohibition is not enough to constitute an FDCPA violation. But the manual does demonstrate that there are some instances where a debtor cannot have his default status erased. The manual explains that if the guarantor reported the default status, it may be expunged before the 7-year period if the loan is rehabilitated, but information reported by the original lender will not be expunged even if the loan is rehabilitated. *See* [94] at 17. And because F.H. Cann indicated that Fleischer could have his default status erased without identifying this nuance, its statement is potentially misleading, and Fleischer should be permitted to provide extrinsic evidence to prove that it is.

The FDCPA also requires that a debt collector provide certain information, including the amount of debt owed and the name of the creditor, in its initial communications with a debtor. 15 U.S.C. § 1692g(a). And if the consumer notifies the debt collector within 30 days that he disputes the debt, the collector must cease collection until it obtains verification of the debt or a copy of the judgment and provides it the debtor. 15 U.S.C. § 1692g(b). Fleischer alleges F.H. Cann failed to

---

Cann's argument that he failed to allege how this was a violation of the FDCPA or that F.H. Cann was responsible. And he did not argue in his response to Delta's motion that any of Delta's conduct occurred within the statute of limitations. Because this allegation lacks particularity, is based on information and belief, and Fleischer did not address it in his briefs, I conclude he has not plausibly attributed it to either Delta or F.H. Cann.

provide him with the requested verification which, if true, would be an FDCPA violation. He also argues that F.H. Cann's statement that his loan was "held by" American Student Assistance did not clearly indicate the name of the current creditor. It may be that an unsophisticated customer would have understood this statement, but it is not so clear as to warrant dismissal at this stage. Fleischer has plausibly alleged conduct that, if true, would amount to an FDCPA violation.

## C. Breach of Contract and Promissory Estoppel

Fleischer brings breach-of-contract and promissory-estoppel claims against Conduent. To establish a claim for breach of contract, a plaintiff must allege (1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) resultant injury to the plaintiff. *Burkhart v. Wolf Motors of Naperville, Inc. ex rel. Toyota of Naperville*, 2016 IL App (2d) 151053, ¶ 14. Conduent does not dispute that Fleischer alleges a contract with Access Group for forbearance of his loan but argues that he has failed to state a claim against Conduent. Based on the allegations in Fleischer's complaint, it is plausible to infer that Access Group assigned the loan-servicing portion of its contract with Fleischer to Conduent. This assignment should have included the forbearance agreement and is enough to allege a valid contract between Fleischer and Conduent. *See In re Ocwen Loan Servicing, LLC Mortg. Serv. Lit.*, 491 F.3d 638, 645 (7th Cir. 2007) (noting that a breach-of-contract claim against a mortgage servicer "is no different than if the original mortgagee, or an assignee of the entire mortgage, had violated the terms" of the agreement). Fleischer also plausibly alleges that he performed his part of the

18

contract, that Conduent failed to honor the forbearance by declaring his loan to be in default, and that he was damaged as a result.

A plaintiff can state a claim for promissory estoppel by alleging: (1) the defendant made an unambiguous promise to the plaintiff, (2) the plaintiff relied on that promise, (3) his reliance was expected and foreseeable by the defendant, and (4) his reliance was to his detriment. *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 677 (7th Cir. 2005). Promissory estoppel is not designed to be "a second bite at the apple" when a plaintiff fails to prove breach of contract. *Id*. Instead, a claim for promissory estoppel is generally appropriate where all the other elements of a contract exist, but consideration is lacking. *Id*. Fleischer does not plead promissory estoppel in the alternative to his breach-of-contract claim in case he is unable to prove consideration. And he has failed to allege the requisite elements; he does not assert that Conduent made him an unambiguous promise or that he relied on anything Conduent said to him. These allegations are consistent with breach of contract, but do not support a promissory-estoppel claim.

Conduent argues that Fleischer's breach-of-contract and promissory-estoppel claims are barred by the Statute of Frauds. In Illinois, a contract must be in writing unless it is capable of being fully performed within one year. 740 ILCS 80/1. Fleischer alleges that his loan forbearance lasted up to three years and does not claim to have signed a final loan-forbearance agreement or received any documentation that the agreement was accepted. But he does assert that Access Group accepted his forbearance and mailed written confirmation to his old address. Illinois subscribes to

19

the mailbox rule, meaning that taking Fleischer's allegations as true, a contract was formed when Access Group placed the confirmation in the mailbox. *See Silverado Group, LLC v. Ed's Towing, Inc.*, 2012 IL App (2d) 120629-U, ¶ 32. And because the contract was in writing, as alleged in the complaint there is no statute-of-frauds problem. Though Fleischer does not allege that he has a copy of the contract, he has plausibly alleged that it exists, and this is enough to state a claim for breach of contract against Conduent.

### D. Fraudulent and Negligent Misrepresentation

The elements of a claim for fraudulent misrepresentation include: (1) a false statement of material fact; (2) known or believed to be false by the party stating it; (3) intent to induce the other party to act; (4) action in justifiable reliance by the other party; and (5) damage because of that reliance. *Gerill Corp. v. Hargrove Builders, Inc.*, 128 Ill.2d 179, 193 (1989). A "misrepresentation is fraudulent either where a party makes the representation knowing it is false *or* where the misrepresentation was made with a reckless disregard for its truth or falsity." *Id*. "Negligent misrepresentation has essentially the same elements, except that the defendant's mental state is different. The defendant need not know that the statement is false. His own carelessness or negligence in ascertaining its truth will suffice." *Bd. of Educ. of City of Chi. v. A, C, & S, Inc.*, 131 Ill.2d 428, 452 (1989). Additionally, in claims for negligent misrepresentation a plaintiff must also allege that the party making the statement had a duty to communicate accurate information. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833–34 (7th Cir. 2007). The

heightened pleading standard under Rule 9(b) applies to claims for fraudulent misrepresentation, but not negligent misrepresentation. *Id*. at 838; *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 591 n. 71 (7th Cir. 2017).[4]

Fleischer dropped his claims for fraudulent and negligent misrepresentation against Conduent but continues to pursue his claims against Delta. He points to the same statements already discussed: that American Student Assistance had sent letters to his correct address, that calls to Fleischer had not gone through because his voicemail was not set up, and that American Student Assistance was good at dealing with situations like his. Fleischer has failed to plausibly allege that Delta was negligent in ascertaining the truth of these statements, much less that it knew they were false. From Fleischer's allegations it appears that Delta merely repeated information American Student Assistance had provided about its collection efforts. Fleischer argues that because Delta did not have any paperwork regarding his loan, all of Delta's statements about his loan—including the owner, servicer, and specific amount due—were negligently made without regard to their truth. But that Delta did not have any documents to give to Fleischer when he requested them does not mean that it could not reasonably have relied on information it received from Conduent or American Student Assistance about his loan. *See Hyman v. Tate,* 362

---

[4] Although Delta mistakenly argued that negligent misrepresentation claims are subject to Rule-9(b) particularity, I disagree with Fleischer that this constitutes a waiver of its arguments with respect to negligent misrepresentation altogether. Delta's arguments hold true even under the more relaxed Rule-8 standards.

F.3d 965, 968 (7th Cir. 2004) (noting that debt collectors are not required to independently verify the validity of the debt).

Fleischer also points out that Delta's statements contradicted American Student Assistance's statement that it had to track Fleischer down. Even if these were inconsistent, there is no indication that Delta would have known what American Student Assistance said to Fleischer, and so it does not follow that any inconsistency is relevant to Delta's state of mind. To the extent the complaint, which alleges that a Delta representative told Fleischer "that Defendants tried calling" him can be construed as asserting that Delta had tried to call him in the past, one could reasonably infer that Delta knew Fleischer's voicemail was set up and therefore knew its statement to the contrary was false. But Fleischer has failed to plausibly allege the remaining elements with respect to this statement or any other. There are no facts to support Fleischer's conclusory assertions that Delta intended him to rely on these statements, that he did rely on them, or that he was damaged because of his reliance. As a result, Fleischer has failed to state a claim for either fraudulent or negligent misrepresentation.

### E.    Fraudulent Concealment

Conduent moves to dismiss Fleischer's claim against it for fraudulent concealment. To state a claim, a plaintiff must allege (1) the elements of fraudulent misrepresentation and (2) that the defendant intentionally omitted or concealed a material fact it was under a duty to disclose to the plaintiff. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012). A duty arises when a fiduciary or

confidential relationship exists, or when a plaintiff places trust or confidence in a defendant, thereby putting the defendant in a position of influence or superiority over the plaintiff. *Id.* "This degree of trust and confidence can be shown by such factors as degree of kinship, age disparity, health, mental condition, education, business experience, [and] extent of reliance." *Santa Claus Indus., Inc. v. First Nat. Bank of Chi.*, 216 Ill.App.3d 231, 238 (1st Dist. 1991). Fleischer alleges Conduent concealed that his loan had a new owner and had been transferred to a new servicer, the account was in arrears, late fees and collection fees had been added, and the loan was in default. But Fleischer has not alleged any facts indicating that he had any fiduciary or confidential relationship with Conduent. It is clear from Fleischer's complaint that, aside from Conduent's response to the CFPB inquiry, Fleischer had no communications with Conduent at all. Without alleging any relationship between the two, Fleischer has not plausibly alleged that Conduent had a duty to disclose any information to him and so has failed to state a claim for fraudulent concealment.

## IV.    Conclusion

Conduent's motion to dismiss, [67]; F.H. Cann's motion to dismiss, [76]; and Delta's renewed motion for judgment on the pleadings, [71], are granted in part, denied in part.

ENTER:

Manish S. Shah
United States District Judge

Date:  September 19, 2018

23