# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JEFFREY FLEISCHER,

      Plaintiff,

   v.

ACCESSLEX INSTITUTE, CONDUENT
EDUCATION SERVICES, LLC, and F.H.
CANN & ASSOCIATES,

      Defendants.

No. 17 CV 8295

Judge Manish S. Shah

## MEMORANDUM OPINION AND ORDER

When he had trouble making his student loan payments in late 2011, plaintiff Jeffrey Fleischer applied for forbearance from his loan servicer, defendant AccessLex Institute (doing business as Access Group). Based on a phone conversation with an Access Group representative, Fleischer believed it had accepted his application and that he could forgo payments for up to three years. Access Group, however, has no record of a forbearance agreement and continued to send Fleischer monthly statements (though Fleischer did not receive them). Access Group transferred its loan obligations to defendant Conduent, and by 2017, defendant F.H. Cann was sending Fleischer collection notices. Fleischer now brings Illinois Consumer Fraud Act, Breach of Contract, and Fair Debt Collection Practices Act claims, among others, based on defendants' administration of his loan and collection efforts. Defendants move for summary judgment, and for the reasons discussed below, their motions are granted.

## I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). I construe all disputed facts in favor of the nonmoving party. *Mollet v. City of Greenfield*, 926 F.3d 894, 896 (7th Cir. 2019).

## II. Background

### A. Fleischer's Loan

Plaintiff Jeffrey Fleischer consolidated several undergraduate and graduate student loans with defendant Access Group sometime around June 1, 2004. [167] ¶ 2.[1] In signing his promissory note, Fleischer agreed he had read and understood the terms and conditions, including the Borrower's Rights and Responsibilities, which stated that he was required by law to notify his lender in writing if he changed his permanent address, email, phone number, or employment status. [162] ¶ 6; [165] ¶¶ 6–7. Kentucky Higher Education Student Loan Corporation serviced Fleischer's

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. The facts are largely taken from plaintiff's responses to defendants' Local Rule 56.1 statements, [162], [165], and [167], and defendants' responses to plaintiff's Local Rule 56.1 statements, [172], [174], and [175], where both the asserted fact and the opposing party's response are set forth in one document. I disregard any arguments raised in the Local Rule 56.1 statements, additional facts included in responses or replies, and statements that are unsupported by admissible evidence (or where a party fails to follow Local Rule 56.1's direction to cite to supporting material in the record). Only facts that are properly controverted will be considered disputed. I will not consider facts the parties assert in their briefs that are not found in their LR 56.1 statements.

consolidated loan from 2004 through March 2009, when it transferred loan servicing to Access Group. [162] ¶¶ 7–8.[2] Fleischer made his payments on time until January 2011, when Access Group sent him a notice that his loan was one payment past due. [162] ¶ 9–10.[3] The next month, Fleischer prepaid the amount due on his loan through the end of the year. [162] ¶ 11.

Fleischer moved from his parents' home to an apartment on Pratt Street in Chicago in January 2011, and he provided his new address to Access Group. [162] ¶ 37; [165] ¶ 8. He moved again ten months later to an apartment on North Sheridan Road. [165] ¶ 9. Fleischer notified the post office of the latter change of address, received forwarded mail there, and was not aware of any issues with his mail being forwarded. [165] ¶ 10; [172] ¶ 8. Fleischer never notified Access Group or Conduent in writing that he had a new address. [165] ¶ 27. Fleischer used a phone number with an 847 area code from 2002 up until June 2011, and he switched to a number with a 773 area code in December. [165] ¶¶ 11–12. He never updated his phone number with either Access Group or Conduent. [165] ¶ 40.

In late October or early November 2011, Fleischer mailed a forbearance application to Access Group. [165] ¶ 13. When he didn't hear anything, he called

---

[2] Fleischer's responses that he does not have personal knowledge of defendants' business operations do not controvert the defendants' assertions.

[3] Fleischer makes blanket hearsay objections to defendants' supporting declarations and affidavits. Affidavits and declarations are not automatically hearsay. "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Rule 56(c)(4). Fleischer does not explain why any of defendants' affidavits or declarations are deficient, and I see no reason to disregard them.

Access Group a few weeks later, in late November, to follow up. [165] ¶ 14. According to Fleischer, an Access Group representative told him that his forbearance request was approved for up to three years, that interest would continue to accrue on the loan at 2.5%, and that Access Group had mailed the response to Fleischer's parents address (though at that time, Access Group had Fleischer's Pratt Street apartment address in Fleischer's file, not his parent's address). [162] ¶¶ 17, 36; [165] ¶ 15. Fleischer never asked his parents if they received the forbearance agreement. [162] ¶ 35.

The representative did not specify whether the forbearance would last for any definite minimum period. [162] ¶ 19. Fleischer never received a written response, did not learn any other details of the forbearance agreement, and the representative did not read the response to him over the phone. [162] ¶ 18; [165] ¶¶ 16–17. Fleischer gave the representative his new Sheridan Road address and she read it back to him to confirm. [165] ¶ 18. Access Group's records do not indicate that it received any phone calls from Fleischer in November 2011 or that it ever received a call from Fleischer relating to a forbearance at any point before transferring its servicing obligations on Fleischer's loan to Conduent in February 2012. [162] ¶¶ 20–21; [165] ¶ 4. It also has no record of ever receiving a forbearance application from Fleischer or of mailing him a response while it was servicing his loan. [162] ¶¶ 15, 22. During the time when it serviced Fleischer's loans, Access Group required that borrowers submit supporting documentation when applying for a forbearance. [162] ¶ 23. Fleischer does not recall whether he submitted supporting documents or what application form he

used, but both forms available at the time stated that a forbearance is granted in 12-month increments and required borrowers to reapply each year. [162] ¶¶ 14, 25. When granting a forbearance, Access Group mailed a confirmation letter providing the terms and conditions, it generally did not grant forbearances over the phone. [162] ¶¶ 26–27.

Access Group mailed Fleischer monthly statements to Fleischer in December, January, and February, indicating his loan was not in forbearance and that his next payment was due. [162] ¶¶ 39–43. It also sent him notices that his loan was past due and later delinquent. [162] ¶¶ 43–44. It sent these documents to the address it had on file, the apartment on Pratt Street. [162] ¶ 45. Fleischer did not receive them, but he did not expect to receive any documentation while his loan was in forbearance. [172] ¶ 13.

When transferring its servicing obligations to Conduent, Access Group informed Conduent that Fleischer's loans were in repayment and past due, and none of the documents Conduent received from Access Group mentioned a November 2011 forbearance. [165] ¶¶ 21–22. Conduent did not receive any other information referencing a November 2011 forbearance, and Fleischer never contacted Conduent about it. [165] ¶¶ 19, 23.[4] Access Group sent a co-branded letter to Fleischer, notifying

---

[4] Fleischer objects to Conduent's Borrower History and Activity Report as inadmissible hearsay. The report lists activities related to Fleischer's account, such as Conduent mailing him a letter or assessing a late fee. Fleischer argues that the report does not qualify for the business-records exception because it was prepared at or near the time of litigation. Though the report itself may have been prepared for litigation, it merely compiles and presents the relevant records, which were prepared in the regular course of business. *See* [141-2]; [141-7] ¶¶ 2–5. Fleischer's objection is overruled.

him of the transfer, but Fleischer never received it. [162] ¶¶ 49–50. Records of Fleischer's account indicate a forbearance "beginning 1/7/12 and ending 2/7/12," during which time Conduent was servicing Fleischer's loan. [172] ¶ 28. Conduent mailed two notices to Fleischer's Pratt Street address on February 20, 2012. [165] ¶ 24.[5] Three days later, Conduent received a national change of address notice and updated Fleischer's account to add his Sheridan address. [165] ¶ 26. Conduent sent notices to Fleischer's Sheridan address from March through November 11, 2012, when it sent a final demand for payment. [165] ¶¶ 28–39. Conduent called Fleischer at his 847 number and left voicemails from May through October. [165] ¶¶ 40–61. Fleischer did not receive these notices or voicemails. [175] ¶¶ 3–5.[6]

In June 2013, Fleischer got a job as a contractor, and he did not notify Access Group or Conduent of his employment change. [165] ¶¶ 63–64. On November 8, 2013, Delta Management Associates, Inc. sent Fleischer a letter at his Sheridan address stating his loan was in default and owned by American Student Assistance. [167] ¶ 4;

---

[5] Fleischer objects to Conduent's reliance on its business records to show that it mailed or called him, asserting these records violate the best evidence rule. Fed. R. Evid. 1002; [165] ¶¶ 24, 29, 30, 41. Conduent relies on its records to show that it notified Fleischer, it does not seek to prove the content of the recordings or notices it sent, so the best evidence rule does not require that they be produced in their original format. He also asserts that Conduent improperly cites to blank versions of the promissory note and incorporated documents. [165] ¶¶ 6, 7, 62. But Conduent includes Fleischer's executed promissory note. It includes a blank version in addition because it is easier to read. The signed copy does not contain the Borrower's Rights and Responsibilities. It references them and states that the borrower is entitled to a copy. There is no indication that there is a version of the signed copy that contains those terms that would constitute better evidence.

[6] Fleischer sought to incorporate his assertions of additional facts for Access Group's motion to Conduent. *See* [175] ¶ 1. Because doing so would have exceeded the forty statements of additional fact permitted by LR 56.1, Conduent did not respond to them. Deeming those facts admitted as to Conduent would not affect the outcome of its motion.

[172] ¶ 17. Before receiving that letter, Fleischer had not heard of Delta, American Student Assistance, or Conduent, and he was confused about who owned his loan. [172] ¶¶ 15–16. Fleischer called Delta and informed it that his loan should have been in forbearance and that he disputed the amount owed. [172] ¶¶ 18–20. He also called Access Group; it told Fleischer to call Conduent. [165] ¶ 66.[7] Fleischer did not do so. [165] ¶ 67. That same day, Fleischer filed a complaint to the Consumer Financial Protection Bureau. [165] ¶ 68. The complaint listed only Delta in the "Consumer Identified Company Name" field; it did not mention Conduent anywhere in the complaint. [165] ¶¶ 68–69. Because Conduent was not the subject of the complaint, Fleischer did not expect Conduent to respond to it. [165] ¶ 72. Conduent did not have notice of Fleischer's 2013 complaint until after Fleischer filed this lawsuit in 2017. [165] ¶ 74. In the winter of 2017, Fleischer sent a letter to U.S. Senators Richard Durbin and Tammy Duckworth regarding the circumstances of his default. [165] ¶ 75. Conduent received a copy, and that was the first complaint Conduent received from Fleischer. [165] ¶ 76. On March 29, 2017, the bureau responded to Fleisher's letter and included Conduent's response, which asked Fleischer to provide support for his claim. [165] ¶¶ 77–78. Fleischer never contacted Conduent about its request for additional support. [165] ¶ 79.

F.H. Cann sent Fleischer a letter attempting to collect on his account on April 4, 2017. [167] ¶ 5. Fleischer was confused that "F.H. Cann was involved at all [because he] never heard of this company prior" and that F.H. Cann was "making the

---

[7] At the time, Conduent was known as ACS.

same claims that had been made by ASA in the past." [167] ¶¶ 7–8. An attorney told Fleischer to send a letter to F.H. Cann disputing the debt, and Fleischer did so on April 27. [167] ¶¶ 10–11. F.H. Cann provided Fleischer with documents to validate his debt on May 10, 2017. [167] ¶ 12. When it did not hear anything else from Fleischer, F.H. Cann sent a collection letter on June 1. [167] ¶ 13.

### B.    Additional Background

In 2003, Federal Student Aid entered into contract with Conduent, which required it to switch to a certain debt collection management system, and it upgraded that system in 2011. [175] ¶¶ 6–8.[8] Because of deficiencies and operational issues with the system used to track and service defaulted and federal loans, Federal Student Aid issued a cure notice to Conduent in February 2012. [175] ¶ 9. In December, Conduent and Federal Student Aid entered a settlement agreement extending the contract through June 2014. [175] ¶ 10. An independent auditor's report dated November 2012, concluded that the debt collection system was unable to accept some debt accounts transferred from loan servicers and that Federal Student Aid was unable to receive collections or process rehabilitated loans. [175] ¶ 11. A month later, the Office of the Inspector General issued an alert memorandum informing Federal Student Aid of these problems and noting that since the upgrade, more than $1.1 billion in debt accounts should have been transferred into the

---

[8] In 2003, Conduent was known as ACS. By 2015, when the report was written, Conduent had again been renamed to Xerox Education Solutions, LLC. *See* [59-4] at 19. Conduent asserts that this report is not relevant because it references Xerox Education Solutions, not Xerox Education Services. The report also refers to ACS. Viewing the facts in the light most favorable to Fleischer, I infer the report references Conduent.

collection management system but were not because of functional issues. [175] ¶ 12. Federal Student Aid terminated its contract with Conduent in 2012. [175] ¶ 13. The Government Accounting Office issued a report in 2014 stating that because of problems with the collection management system, "Education was unable to provide most borrowers who completed loan rehabilitation with timely benefits, such as removing defaults from their credit reports, for more than a year following the October 2011 upgrade." [175] ¶ 14. The report further noted that Conduent had an unreliable performance history. [175] ¶ 17. A 2015 study of two-year colleges in Iowa found that Conduent had a 73.1% default rate for the 2011 fiscal year. [175] ¶ 18.

A 2005 report from investment advisor Nomura Fixed Income Research noted that federal student loan processors, like Access Group, are process-oriented, meaning they are less concerned than private loan processors with ensuring their activities result in payment. [172] ¶¶ 22–23. Access Group disclosed to investors in 2010 that it could be negatively impacted by the elimination of the Federal Family Education Loan Program, and according to the CFPB, the wind-down of that program eliminated the primary source of new servicing volume for many specialty student loan market participants. [172] ¶¶ 24–25. A credit rating agency downgraded Access Group's loans in late 2011, due at least in part to the risk of disruption during the transfer to Conduent. [172] ¶¶ 26–27.

The Department of Education provided debt-collection monitoring and guidance for all private collection agencies it worked with to ensure companies

9

provided borrowers accurate information regarding their loans. [174] ¶ 11, 13.[9] For example, it provided a manual containing guidelines, policies, and procedures to private collection agencies, which included guidelines for accurately communicating the benefits of rehabilitating a loan to borrowers. [174] ¶¶ 1, 7.[10] Before updating the manual, it terminated five private collection agencies (F.H. Cann was not one of them) largely because of their misrepresentations concerning the effects of rehabilitation on a borrower's credit report. [174] ¶¶ 9–10, 12.

## III.   Analysis

### A.   Rule 56(d)

Fleischer does not respond to the merits of Conduent's and Access Group's motions. Instead, he asserts he cannot present facts essential to justify his opposition and asks for additional discovery. *See* Fed. R. Civ. P. 56(d). "If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d). In his declaration, Fleischer asserts

---

[9] I disregard Fleischer's factual assertions based on a Court of Claims opinion. *See* [174] ¶¶ 14–22. That court concluded, on a motion to dismiss, that it did not have jurisdiction to decide the merits of the credit-reporting agencies' claims. *See* [168-6]. That it mentioned certain facts, therefore, does not establish that those facts are true.

[10] F.H. Cann disputes Fleischer's assertions about the manual, arguing the asserted facts are not material, not contained in the record, and not accurate paraphrases of the manual. F.H. Cann does not address what about Fleischer's assertions—many of which are direct quotes from the manual—do not accurately paraphrase it. Nor does it object to the authenticity of the manual, which Fleischer properly attached to his statement of additional material facts. *See* [168-3]. Because it has not controverted Fleischer's assertions, I consider them admitted.

he needs access to the metadata of defendants' documents to find out whether they were made or compiled at the time of the events; at what point defendants' systems were operable and whether they might have been impaired; whether the entries were automated and who made them; when the entries were created and whether they were ever revised or deleted, when, and by whom; and when the systems were integrated between the two servicers. *See* [161] ¶ 4. Fleischer asserts that he needs this information to show that defendants' business records are not trustworthy and do not qualify for the business records hearsay exception.

In October 2018, I extended the fact discovery deadline to February 28, 2019. Plaintiff's counsel asserts that he worked diligently to ensure that he could meet this deadline, but that Fleischer's deposition—which took place on February 12, after defendants rescheduled it four times—"raised certain issues with the case, and amplified others." [161] ¶ 16. Fleischer asked for an extension on February 22, which I denied. After discovery had closed, on March 4, Fleischer retained an expert to analyze the documents defendants had produced and learned they were "essentially useless" because they did not provide metadata. [161] ¶¶ 17–18. He asserts that it would be impossible "for any natural person lacking an IT department, to prove his case against the Defendants' 'voluminous records from a database, server or other electronic storage facility' unless his expert is allowed to examine Defendants' evidence." [161] ¶ 19. After retaining his expert, Fleischer moved for reconsideration of the refusal to extend the discovery deadline, which I also denied.

"Unless the parties agree or the Court orders otherwise," the Mandatory Initial Discovery Pilot Program provides that "a party must produce ESI in the form requested by the receiving party. If the receiving party does not specify a form, the producing party may produce the ESI in any reasonably usable form that will enable the receiving party to have the same ability to access, search, and display the ESI as the producing party." *See* Standing Order Regarding Mandatory Initial Discovery Pilot Project. Fleischer argued in his motion to reconsider that the pdf format in which defendants produced the documents was not reasonably usable, but he waited until after the close of discovery to do so. He advances the same argument once again.

Rule 56(d) does not protect a party whose "own lack of diligence is to blame for [its] failure to secure discoverable information." *Grayson v. O'Neill*, 308 F.3d 808, 816 (7th Cir. 2002). Fleischer does not dispute that his need for additional time is at least in part due to his own tardiness; instead he argues that his conduct was not so egregious as to warrant denial of his Rule 56(d) motion. Egregious or not, nothing but Fleischer's own procrastination prevented him from obtaining the documents in his preferred format, and that does not justify any further delay. Fleischer has not, in any of his three requests for additional time to conduct discovery, adequately explained why he could not reasonably have requested this information before the discovery deadline. *See* [126], [131], [161]. Fleischer asserts that his deposition was taken near the close of discovery and that it was expensive to hire an IT person to determine the document format he needed. But he points to nothing new about

metadata in defendants' documents that arose at the deposition, nor does he explain why it became more feasible to hire an expert after discovery had closed.

Because Fleischer did not address the merits of Conduent's or Access Group's motions, he has forfeited any arguments in opposition. *Nichols v. Mich. City Plant Planning Dep't*, 755 F.3d 594, 600 (7th Cir. 2014) ("The non-moving party waives any arguments that were not raised in its response to the moving party's motion for summary judgment."); *Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011).

## B. Illinois Consumer Fraud Act

Fleischer alleges that both Accesslex and Conduent violated ICFA in administering his loan. Defendants argue that Fleischer's ICFA claim is barred by the statute of limitations and that he has failed to establish its required elements.

### 1. Conduent

The statute of limitations for a violation of ICFA is three years. 815 ILCS § 505/10a(e). "Generally, in tort, a cause of action accrues and the limitations period begins to run when facts exist that authorize one party to maintain an action against another." *Blair v. Nevada Landing P'ship*, 369 Ill.App.3d 318, 323 (2d Dist. 2006). Fleischer filed his original complaint on November 15, 2017, and so to be timely his ICFA claim must have accrued after that date in 2014. *See Fleischer v. Accesslex Institute*, 17 CV 8295, 2018 WL 4489583, at *5 (N.D. Ill. Sept. 19, 2018). I denied Conduent's motion to dismiss Fleischer's ICFA claim on statute-of-limitations grounds, concluding that Fleischer's allegations that Conduent failed to respond to its 2013 CFPB complaint were consistent with a continuing violation—which delays

13

accrual until the date of the last injury or when the tortious act ceases. *Id*. (citing *Gredell v. Wyeth Laboratories, Inc.*, 346 Ill.App.3d 51, 59 (1st Dist. 2004)). Conduent argues that Fleischer did not name it in his 2013 CFPB complaint and did not expect him to respond. Because this conduct was not unfair, Conduent asserts, there is no continuing violation rendering Fleischer's claim timely.

The elements of an ICFA claim are: (1) the defendant engaged in a deceptive or unfair act or practice; (2) the defendant intended that the plaintiff rely on that practice; and (3) the practice occurred during a course of conduct involving trade or commerce. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill.2d 403, 417 (2002); *see also Capiccioni v. Brennan Naperville, Inc.*, 339 Ill.App.3d 927, 933 (2d Dist. 2003) (including actual damages proximately caused by the deception as additional elements). A practice is unfair if it (1) violates public policy; (2) is so oppressive that the consumer has little choice but to submit; and (3) causes consumers substantial injury. *Siegel v. Shell Oil Co.*, 612 F.3d 932, 934 (7th Cir. 2010). "All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." *Robinson*, 201 Ill.2d at 418 (quoting *Cheshire Mortgage Service, Inc. v. Montes*, 223 Conn. 80, 106 (1992)). Because Fleischer did not name Conduent in his initial CFPB complaint, it was not unfair that Conduent did not respond to it. There was no policy requiring Conduent to respond, and there is no evidence indicating its failure to do so was oppressive or that it caused Fleischer any injury,

let alone a substantial one. Conduent's conduct was not a continuing violation, and Fleischer's claim is time-barred.

It also fails on the merits. In addition to Conduent's failure to respond to his CFPB complaint, Fleischer alleged Conduent acted unfairly by not notifying him of the problems with his loan and by failing to honor the forbearance agreement. Viewing the facts in the light most favorable to Fleischer, though he did not receive the notices, Conduent sent them to the address that it had on file. Nothing indicates that Conduent intentionally sent notices to the wrong address, called the wrong phone number, or intended for Fleischer to rely on the lack of notice. Nor did this conduct cause substantial injury. An injury is substantial if it is not outweighed by any countervailing benefits to consumers and if the consumer could not have reasonably avoided it. *Siegel*, 612 F.3d at 935. If Fleischer had provided either Access Group or Conduent with an updated address or phone number in writing, as required by his promissory note, he would have learned that his loan was not in forbearance and could have avoided any injury.

There is also no evidence Conduent knew Fleischer had applied for forbearance or that he was under the impression that he was not required to make payments. As a result, there is no evidence from which a reasonable jury could infer that Conduent intended for Fleischer to rely on its failure to honor his forbearance. This conduct is also indistinguishable from Fleischer's breach of contract claim, and to establish an ICFA claim a plaintiff must point to conduct that is distinct from the alleged breach of contract. *Greenberger v. Geico Gen. Ins. Co.*, 631 F.3d 392, 399 (7th Cir. 2011).

2.    *Access Group*

Fleischer's ICFA claim against Access Group is similarly time-barred. Fleischer alleges that Access Group engaged in unfair conduct when it failed to honor, document, or record his forbearance and by failing to exercise due diligence in servicing his loan. He asserts Access Group engaged in deceptive conduct when it told him his forbearance application was approved and then failed to honor it. This conduct all took place before Access Group transferred its servicing obligations to Conduent in February 2012, and so is barred by the three-year statute of limitations. Moreover, Fleischer has not shown that he suffered actual damages. At summary judgment, a plaintiff must make a "showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Nothing in the parties' asserted facts shows how Fleischer was harmed from Access Group's conduct, and so Fleischer has not established the necessary elements of his ICFA claim.

**C.    Breach of Contract**

Fleischer brings breach-of-contract claims against Access Group and Conduent for their failures to honor the forbearance agreement. Both defendants argue that there is insufficient evidence from which a jury could reasonably conclude that a contract existed, or that they breached it, and that the statute of frauds bars Fleischer's claim. Access Group also argues that the claim is time-barred.

### 1. Statute of Frauds

The Illinois statute of frauds provides that "[n]o action shall be brought … upon any agreement that is not to be performed within the space of one year from the making thereof, unless the promise or agreement upon which such action shall be brought … shall be in writing, and signed by the party to be charged therewith." 740 ILCS 80/1. Defendants' statute-of-frauds argument fails for two reasons. First, Fleischer has asserted—albeit without any tangible evidence—that Access Group sent a written copy of the agreement to his parent's address. Viewing the facts in the light most favorable to Fleischer, the person who told him that Access Group had accepted his application and mailed him a written agreement was an Access Group employee acting within the scope of her employment. Her statement, therefore, would be admissible against Access Group. *See* Fed. R. Evid. 801(d)(2)(D).[11] From this, a reasonable juror could conclude that a written agreement existed at one point, satisfying the statute of frauds. Second, though Fleischer does not recall which application form he sent or its precise terms, Access Group asserts that the application forms available at the time allowed a borrower to apply for forbearance only in twelve-month increments, subject to renewal for up to three years. Because the agreement could have been performed within a year, the statute of frauds does not bar Fleischer's claim.

---

[11] Fleischer does not explain how the statement would be admissible against Conduent. *See* Fed. R. Evid. 801(d)(2)(D) (providing that a statement is not hearsay if offered against an opposing party and "made by *the party's* agent or employee on a matter within the scope of that relationship and while it existed") (emphasis added).

2. *Statute of Limitations*

Access Group argues that Fleischer's breach of contract claim is barred by the statute of limitations. The statute of limitations for breach of contract in Illinois is ten years for a written contract and five years for an unwritten contract. 735 ILCS 5/13-205, 735 ILCS 5/13-206. "[I]n Illinois, the test for whether a contract is written under the statute of limitations is not whether it meets the statute of frauds, but whether all essential terms of the contract could be ascertained from the written instrument." *Toth v. Mansell*, 207 Ill.App.3d 665, 673–74 (1990). If "the existence of that contract or one of its essential terms must be proven by parol evidence, the contract is deemed oral and the five-year statute of limitations applies." *Armstrong v. Guigler*, 174 Ill.2d 281, 288 (1996). Here, Fleischer has not produced a copy of either his application or Access Group's written confirmation. Instead, he relies on his testimony that an Access Group employee told him his application had been approved. Because the existence of the contract must be proven with parol evidence, the five-year statute of limitations applies.

A breach-of-contract cause of action generally accrues when the contract is breached. *Hermitage Corp. v. Contractors Adjustment Co.*, 166 Ill.2d 72, 76–77 (1995). The discovery rule delays commencement of the statute of limitations, however, until the plaintiff knew or reasonably should have known that he has been injured and that his injury was wrongfully caused. *Id.* at 77. Though Fleischer was unaware of the breach until November 2013, he reasonably should have known about it before. Had he done any number of things to ensure that his loan was in forbearance—like

asking for another copy of the confirmation to be mailed to his new address, checking to see whether his parents had received it, or updating his address and phone number as his promissory note required him to do—he would have learned something went wrong. At the very latest, Fleischer should have learned of the breach by March 2012, when Conduent sent the first notice to the Sheridan address, where he lived at the time. A reasonable person in Fleischer's place would have learned of his injury before November 2012, and so his claim untimely. There is no evidence of defendants' fraudulent concealment that would warrant extending the statute of limitations. *See* 735 ILCS 5/13-215.

Though Conduent does not assert a statute-of-limitations defense, "where one defendant succeeds in winning summary judgment on a ground common to several defendants, the district court may also grant summary judgment to the non-moving defendants, if the plaintiff had an adequate opportunity to argue in opposition." *Acequia, Inc. v. Prudential Ins. Co. of Am.*, 226 F.3d 798, 807 (7th Cir. 2000). Fleischer chose not to address Access Group's argument, but he had the opportunity to do so, and so granting summary judgment in Conduent's favor on statute-of-limitations grounds is appropriate.

### 3. The Merits

Even if it were timely, Fleischer has failed to establish all of the elements of his claim. To prevail on a breach of contract claim in Illinois, a plaintiff must show: "(1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages."

*MC Baldwin Fin. Co. v. DiMaggio, Rosario & Veraja, LLC*, 364 Ill.App.3d 6, 30 (2006). There is evidence that Access Group accepted Fleischer's application—his testimony that an employee told him it had. And there is evidence of the contract's terms. Fleischer asserts that the agreement was for up to three years with no specified minimum time-frame, that interest continued to accrue at 2.5%, and that while his claim was in forbearance, he was not required to make monthly payments. These terms, coupled with Access Group's assertion that any forbearance agreement would have been limited to twelve-month increments, are adequately certain to assess whether the agreement has been breached. If a contract existed, Access Group's continued efforts to collect on the loan would have breached it. But as with his ICFA claim, Fleischer has failed to come forward with any evidence of damages, and so has not established every element of his breach-of-contract claim.

### D.  Fair Debt Collection Practices Act

Fleischer's FDCPA claims against F.H. Cann stem from the two letters it sent on behalf of American Student Assistance. A letter is confusing or misleading if it would be so to the unsophisticated consumer, who is "uninformed, naïve, or trusting," but "possess[es] rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005). When a letter is not plainly confusing—as here, *see Fleischer*, 2018 WL 4489583, at *6—the plaintiff must present "evidence beyond the letter and beyond his own self-serving assertions that the letter is confusing in order to create a genuine issue of material fact for trial." *Durkin*, 406 F.3d at 415. Fleischer

claims the June letter is confusing or misleading because it noted that a borrower could have his loan rehabilitated and enjoy certain benefits without explaining the nuances and limitations of the rehabilitation process, as identified in the Department of Education manual.[12] But as discussed at the motion-to-dismiss stage, while this letter is potentially misleading, it is not plainly misleading. The Department of Education investigation Fleischer points to does not change that. Though that inquiry dealt with the same issue, its general findings that other collection agencies misled consumers on this point does not show that the reasonable consumer would have been confused by the letter F.H. Cann sent to Fleischer.[13] Fleischer has not produced any extrinsic evidence to support his assertion that the reasonable consumer would be confused as required to demonstrate his claim.

Fleischer also alleged that F.H. Cann violated 15 U.S.C. § 1692g(b), which requires that if a consumer notifies a debt collector that he disputes the debt, the debt collector must cease collection until it obtains verification and provides it to the debtor. F.H. Cann's records show that it ceased collections when it received Fleischer's notification, and that it sent Fleischer a letter in response, as the law requires. Fleischer does not address this point. He also fails to address F.H. Cann's

---

[12] Fleischer does not include the contents of the June letter in his LR 56.1 statements of additional fact, nor does he cite to it. This alone, warrants summary judgment on his FDCPA claim. *See* LR 56.1(b)(3)(C) (A "party opposing a motion filed pursuant to Fed. R. Civ. P. 56 shall serve and file … a statement … of any additional facts that require the denial of summary judgment.")

[13] Considering the factual assertions from the Court of Claims opinion would not affect the outcome—that Federal Student Assistance warned other collection agencies that they had misled consumers, does not show that F.H. Cann did so here.

point that because it was collecting debt on behalf of American Student Assistance, it was not responsible for charging interest or fees to Fleischer's account, and so it could not have unfairly assessed any fees or interest. *See Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 641 (7th Cir. 2015) (describing the Higher Education Act and how guaranty agencies are responsible for assessing collection costs). Without more, no reasonable juror could conclude F.H. Cann violated the FDCPA.

## E. Remaining Claims

Fleischer also brings promissory estoppel, fraudulent misrepresentation, and negligent misrepresentation claims against Access Group. Each of these has a five-year statute of limitations. 735 ILCS 5/13-205; *see, e.g., Gillespie Comm. Unit Sch. Dist. No. 7, Macoupin Cty. v. Wight & Co.*, 2014 IL 115330, ¶ 33. As with Fleischer's breach-of-contract claim, the clock began ticking when he reasonably should have known of his injury and that it was wrongfully caused. *Halperin v. Halperin,* 750 F.3d 668, 671 (7th Cir. 2014). These claims all arise from the same conduct—Access Group's promise to honor the forbearance agreement. As such, Fleischer reasonably should have known he was injured before November 2012, and these claims are time-barred.

They also fail on the merits. To prevail on a cause of action for fraudulent misrepresentation, a plaintiff must prove: (1) a false statement of material fact; (2) known or believed to be false by the party stating it; (3) intent to induce the other party to act; (4) action in reliance by the other party; and (5) damage as a result of that reliance. *Hirsch v. Feuer*, 299 Ill.App.3d 1076, 1085 (1st Dist. 1998). The elements for negligent misrepresentation are the same, except that the defendant need only be careless that what he is saying is false. *Bd. of Educ. of City of Chi. v. A, C, & S, Inc.*, 131 Ill.2d 428,

452 (1989). The elements for fraudulent concealment, which Fleischer also alleges, are the same as those for fraudulent misrepresentation, except that the plaintiff must show that the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012).

There is no evidence that Access Group intended to induce Fleischer to act or to rely on its misrepresentation or concealment as required to establish any of these causes of action. After verbally accepting his offer, Access Group mailed notices and called Fleischer using the contact information he provided to it. These notices were meant to alert Fleischer that he owed payments on his loan. He may not have received them, but these notices show that Access Group did not intend for Fleischer to rely on the oral representation that his loan was in forbearance. Because Access Group affirmatively notified Fleischer that his loan was past due, it did not intentionally conceal anything from him. There is also no evidence from which a jury could conclude that Fleischer's reliance was justified. *See Schmidt v. Landfield*, 20 Ill.2d 89, 94 (1960) ("[A] a party is not justified in relying on representations made when he has ample opportunity to ascertain the truth of the representations before he acts. … [I]f he does not avail himself of the means of knowledge open to him he cannot be heard to say he was deceived by misrepresentations."); *see also Williams v. Chicago Osteopathic Health Systems*, 274 Ill.App.3d 1039, 1052 (1st Dist. 1995). Because Fleischer had ample opportunity to learn that his loan was not in forbearance, he cannot now claim that his injuries stem from Access Group's misrepresentation or concealment.

Finally, Fleischer has not identified facts that would establish his promissory estoppel claim. The elements of promissory estoppel are: (1) the defendant made an unambiguous promise to the plaintiff, (2) the plaintiff relied on that promise, (3) his reliance was expected and foreseeable by the defendant, and (4) his reliance was to his detriment. *Dumas v. Infinity Broadcasting Corp.*, 416 F.3d 671, 677 (7th Cir. 2005). It is not designed to be "a second bite at the apple" when a plaintiff fails to prove breach of contract. *Id.* Instead, a claim for promissory estoppel is generally appropriate where all the other elements of a contract exist, but consideration is lacking. *Id.* That is not the situation here. Just as Fleischer has not shown that he suffered damages, he has not shown that he relied on Access Group's promise to his detriment as required for promissory estoppel.

In sum, Fleischer forfeited all arguments in response to Conduent's and Access Group's motions, his claims against them are time-barred, and no reasonable juror could conclude that he has established the necessary elements of his claims against them or F.H. Cann.

## IV.    Conclusion

Defendants' motions for summary judgment [139], [142], and [145] are granted. Enter judgment and terminate civil case.

ENTER:

Manish S. Shah
United States District Judge

Date:  August 26, 2019

24